JOSEPH JURETICH

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 23, 1906—Rehearing denied Dec. 6, 1906.*

1. CONFIDENCE GAME—*what is included in a confidence game.* The confidence game, as meant by section 98 of division 1 of the Criminal Code, includes any swindling operation in which advantage is taken of the confidence reposed by the victim in the swindler.

2. SAME—*what justifies conviction for confidence game.* Proof that the accused wrote a bogus check which he gave to another party, telling him to take it to a merchant, an acquaintance of the latter, apply part of it upon a bill which the accused knew was owing to such merchant and obtain cash for the balance, which the other party did, giving the cash to the accused, who divided with him, is sufficient to justify a conviction under section 98 of division 1 of the Criminal Code, relating to the confidence game.

3. SAME—*admissibility of evidence of similar transactions.* In a prosecution for obtaining money by practicing a confidence game in which a bogus check was used, evidence of similar transactions in which the accused made use of bogus checks is admissible for the purpose of showing guilty knowledge.

4. SAME—*testimony of accomplice may be sufficient to convict.* In a prosecution for obtaining money by means of the confidence

game, the uncorroborated testimony of an accomplice, if believed by the jury, is sufficient to support a conviction.

5. CRIMINAL LAW—*jury's right to judge of the law in criminal cases.* The statutory rule which in Illinois makes jurors judges of the law in criminal cases has been qualified by judicial construction until it has little force, and instructions which contain complicated and argumentative additions to the rule as stated in the statute should be refused.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. GEORGE KERSTEN, Judge, presiding.

CANTWELL & ERBSTEIN, and CHARLES P. R. MACAULAY, for plaintiff in error.

W. H. STEAD, Attorney General, JOHN J. HEALY, State's Attorney, JOHN R. NEWCOMER, and F. L. BARNETT, for the People.

Mr. JUSTICE WILKIN delivered the opinion of the court:

On November 15, 1904, the grand jury of Cook county returned an indictment against the plaintiff in error, Joseph Juretich, of two counts, the first charging him with obtaining money by means of the confidence game, and the second with obtaining money by false pretenses. A motion to quash the indictment was overruled but the second count was dismissed and upon a trial he was found guilty and sentenced to the penitentiary. To reverse that judgment a writ of error has been prosecuted from this court.

It is insisted, that conceding the facts as proven upon the trial to be true, they do not constitute the offense of obtaining money by means of the confidence game; that the mere obtaining of money by a bogus check is not practicing the confidence game, within the meaning of the statute; that the gist of the offense is obtaining money by that kind of fraud commonly called the confidence game, and that the use of a bogus check, or any other device, whatever it may

be, is merely incidental to the crime, so that if money is obtained under circumstances that do not amount to what is commonly called the confidence game there can be no conviction of that offense, even though a bogus check be used.

Section 98 of chapter 38 (Hurd's Stat. 1905, p. 692,) provides that every person who shall obtain or attempt to obtain from any other person or persons any money or property by means or by use of any false or bogus check, or by any other means, instrument or device commonly called the confidence game, shall be imprisoned in the penitentiary not less than one nor more than ten years. This statute does not in specific terms define the confidence game, but merely provides that every person who shall obtain from any other person any money by means of any false or bogus check, commonly called the confidence game, shall be guilty, etc. It assumes that what is commonly called the confidence game is well understood. Acts which will constitute the practice of the confidence game have been before us on several occasions, and we have held that it includes any swindling operation in which advantage is taken of the confidence reposed by the victim in the swindler. It is very often practiced by the use of cards, dice, checks or other means, instruments or devices in which the victim gets nothing, but is simply swindled out of his money by some trick or device. *DuBois* v. *People,* 200 Ill. 157; *Graham* v. *People,* 181 id. 477; *Maxwell* v. *People,* 158 id. 248.

The evidence in this case shows that Juretich conducted a saloon in the city of Chicago, where he met one Frank Hawkins and asked him if he thought he could raise some money. Hawkins replied that he was ready to try. Juretich then drew a check for $19.30, payable to James St. Clair, and without authority signed the name of Charles T. Woods to it, and endorsed it on the back with the name of St. Clair, the payee. He then gave it to Hawkins with instructions to get it cashed. The latter tried at two or three places but failed to get the money and returned to plaintiff in error with

the check.   One Max Goldenberg kept a furniture store in
the city and had gone to school with Hawkins, who was
known to him by the name of Wells.   Among the customers
of Goldenberg was a man named Richard Moore, who was
indebted to him in the sum of $19.30, being a balance due
for furniture purchased.   Juretich knew that Moore was in-
debted to Goldenberg in this amount, as Mrs. Moore had
tried to borrow money from him with which to pay the bill.
Juretich asked Hawkins if he knew Goldenberg.   Hawkins
replied that he did, and Juretich then told him to take the
check to Goldenberg, pay $4 on Moore's account and get the
balance in cash.   Hawkins went to the store and presented
the check, but the clerk or cashier refused to pay it without
Goldenberg's directions, who finally did order her to credit
the amount and pay the balance.   Hawkins received $15.30
in cash, of which amount he gave Juretich $8.30 and kept
the balance.

It is difficult to see how it can be successfully contended
that these acts within our common knowledge do not amount
to obtaining money by means of the confidence game.   The
money was obtained by Hawkins from Goldenberg by means
or by use of a false or bogus check under the direction of
plaintiff in error.   Hawkins had tried at other places to cash
the check and failed.   Juretich sought to take advantage of
the peculiar acquaintance and relations between Hawkins
and Goldenberg, and his knowledge of the indebtedness due
the latter from Moore, to gain the confidence of Goldenberg
and swindle him out of the money.

It is next insisted that the evidence is not sufficient to
sustain the conviction.   The foregoing facts are substantially
undisputed.   Hawkins testified to them and no one contra-
dicts him.   Evidence was offered of similar transactions in
which Juretich had figured as one of the principal actors.
This evidence was not competent nor was it offered as tend-
ing to prove the defendant guilty of the crime charged in
this indictment, but evidence of similar transactions prac-

ticed by the accused upon other parties was admissible to show guilty knowledge. (*DuBois* v. *People, supra.*) Juretich seeks to weaken or destroy the testimony of Hawkins, who, he says, had become angry with him because he had refused to furnish an attorney to defend him on a charge of this offense, and that in order to "get even" with the plaintiff in error, as he expresses it, Hawkins sought to connect him with the crime; also, that Hawkins had pleaded guilty and was at the time of this trial awaiting sentence, and that he hoped to save himself from the penitentiary by implicating the plaintiff in error. The uncorroborated testimony of an accomplice, if believed by a jury, is sufficient to support a conviction. (*Campbell* v. *People,* 159 Ill. 9; *Hoyt* v. *People,* 140 id. 588.) In this case, however, the testimony of Hawkins, the accomplice, does not stand alone but is supported by other facts and circumstances. It is impossible for the plaintiff in error to explain all of the illegal transactions proved against him so as to make them consistent with his innocence.. While a man might on one or even two occasions have in his possession a bogus check and attempt to obtain money thereon and be innocent of any intention to commit a crime, yet when he is connected with numerous transactions of like character he must be charged with knowledge that the one or two transactions were not *bona fide.* In this case proof of other bogus transactions tends very strongly to show that plaintiff in error knew his conduct was criminal, and thus corroborated the testimony of Hawkins.

An expert on handwriting testified that the whole of the check for $19.30 upon which the money was obtained was in the handwriting of one person, as was also the endorsement on the back. Another check drawn on the Fort Dearborn National Bank, payable to the order of Joseph Juretich and signed by Carl Wade, was also offered in evidence and proof made that it also was bogus and forged, and that money was obtained upon it under circumstances similar to those by which it was secured on the check in question. The

expert on handwriting also testified that all of the check and the signatures thereto attached and the endorsements on the back were in the same handwriting as the check upon which the money was obtained from Goldenberg. These facts and circumstances strongly corroborate the testimony of Hawkins, to the effect that the check was drawn by Juretich and endorsed by him and delivered to the witness for the purpose of obtaining the money.

We are satisfied that the jury were fully justified in finding the defendant guilty as charged in the indictment.

It is next contended that the record fails to show that the July term, 1905, of the criminal court of Cook county, at which this case was tried, was properly convened. In support of this contention it is insisted that the statute provides that the terms of the criminal court of Cook county shall begin on the first Monday of each month; that the first Monday of July, 1905, fell on July 3 and that the court was not convened until July 5, which was not within the time provided by the statute, and therefore the term lapsed. The statement that the court was not convened until July 5 is based on the convening order as shown by the original record, which shows interlineations and some evidence of mutilation, but by an amended record filed in this case it is shown that the July term in fact convened on "the first Monday, being the third day, of July," etc. The point is therefore not sustained by the record.

It is also contended that the court erred in giving and refusing instructions. On looking to the abstract of the record we find that at the instance of the People fifteen instructions were given, and the court of its own motion gave another, numbered 16. The defendant also asked about the same number, most of which were given as asked, only two being slightly modified, and the court refused five altogether. It would be a waste of time to attempt to review these numerous instructions *seriatim*. As a whole, subject to the criticism that the large number of them tended to confuse

rather than enlighten the jury, we find the instructions substantially correct.

Serious complaint is made of the refusal to give one asked by counsel for the defendant intended to tell the jury how far it should be controlled by the instructions of the court as to the law. It first states that the jury are the judges of the law as well as of the facts in the case, and that they are not bound by the law as declared by the court, but have the right to determine for themselves what the law is. So far the instruction is in conformity with the language of the statute, but it goes on to say: "You ought to adopt the opinion of the law held by the court if you can conscientiously do so, but if you are convinced that the court is in error, then it is not only your right, but it is your sworn duty, to render a verdict according to the opinion of the law that you yourselves entertain." As a whole it conforms substantially to some of the decisions of this court. Its refusal is justified by counsel for the People on the ground that it was in substance given in the fifth on behalf of the People, which, after telling the jury that they were the judges of the law as well as of the facts, was as follows: "If they can say upon their oaths that they know the law better than the court does, they have a right to do so; but before assuming so solemn a responsibility they should be assured that they are not controlled by their will or their wishes, but from deep and confident conviction that the court is wrong and that they are right. Before saying this upon their oaths it is their duty to reflect whether from their own study and experience they are better qualified to judge of the law than the court. If, under all the circumstances, they are prepared to say that the court is wrong in his exposition of the law, the statute has given them the right."

If called upon to say that this instruction is free from objections we should hesitate to do so, especially as to its argumentativeness. But the argument of counsel for the plaintiff in error is not against its correctness, but against

the position that it covers the rule announced in the one refused. We are of the opinion that they are not materially different,—at least that a jury would so understand them. The statute which makes the jury the judges of the law and the facts has been often severely criticised by the profession, and justly so. Instead of resorting to the legislature to repeal it the courts have from time to time qualified it, until finally it has been rendered absolutely nugatory. No honest and intelligent jury would, upon reflection, say that by their study and experience they were better qualified to judge of the law than the court, and certainly if they must be "convinced, upon a deep and confident conviction, that the court is wrong and they are right," they would never hesitate to follow the law as given by the court, and the statute is thereby rendered meaningless. The legislature should have repealed it long ago. We think both instructions on the subject as they appear in this record should have been refused, but the contention that the fifth does not, in substance, set forth the rule attempted to be announced in that which was refused cannot be maintained. Certainly there was no prejudicial error in the refusal of the one asked.

There is no merit in the contention that the evidence on behalf of the State was introduced in such a manner as to confuse the jury and mislead it to the prejudice of the defendant. Outside of the evidence of the witnesses who testified concerning the transaction in question, as before said, evidence was offered of similar transactions in which the defendant had been interested, for the purpose of showing guilty knowledge. That evidence could not have been properly introduced in a different order than that in which it was offered. The court expressly instructed the jury as to the purpose for which it was offered, and it is not claimed that it was incompetent for that purpose.

This record is voluminous and has required at our hands a somewhat laborious consideration, and we have reached the conclusion that no reversible error was committed by the

trial court to the prejudice of the defendant. The jury were fully and fairly instructed as to the law applicable to every feature of plaintiff in error's defense and he was given the benefit of every reasonable doubt.

The judgment of the criminal court will be affirmed.

*Judgment affirmed.*