## James F. Flynn v. People of the State of Illinois.

### Gen. No. 13,687.

1. CONSPIRACY—*when indictment sufficiently charges.* An indictment sufficiently charges a conspiracy which in substance avers that the defendants, intending and designing to cheat and defraud a specified company of a large amount of money, funds and property, conspired together falsely to pretend that a large number of copies of a specified paper then before sold and delivered by said company to one of said defendants for distribution and sale had been accounted and paid for by said defendant, and to make false entries on the books of said company to the effect that certain amounts of money had been paid by said defendant in the regular course of business of said company, by which false pretenses and false entries said conspirators intended to cheat and defraud said company "of a large number of its said publication, to-wit, 340,000 copies of the value of one-half cent each."

2. CONSPIRACY—*what instruction in prosecution for, improper.* An instruction in a prosecution for conspiracy is improper which tells the jurors that if the evidence leaves a reasonable doubt in their minds as to the guilt of either of the defendants, they should find such defendant not guilty, the law being that if one defendant is not guilty of the conspiracy charged, neither can be held guilty. *Held,* however, in this case that the giving of this instruction was not harmful error.

BAKER, P. J., dissenting.

Criminal prosecution for conspiracy. Error to the Criminal Court of Cook County; the Hon. MARCUS KAVANAGH, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1907. Affirmed. Opinion filed March 6, 1908.

CHARLES J. TRAINOR, for plaintiff in error.

JOHN J. HEALY, State's Attorney, CHARLES F. McKINLEY and LEON ZOLOTKOF, for defendant in error.

MR. JUSTICE FREEMAN delivered the opinion of the court.
Plaintiff in error was indicted with one John A. Colvin, Jr., for conspiracy to defraud the Chicago Journal Company. Both defendants were convicted in the Criminal Court. From the sentence of that court, imposed on each of the de-

fendants, the plaintiff in error prosecutes this writ of error.

The indictment charges in substance that said Colvin and Flynn intending and designing to cheat and defraud the said company of a large amount of money, funds and property, conspired together to falsely pretend that a large number of copies of the Journal then before sold and delivered by said company to said Flynn for distribution and sale had been accounted and paid for by Flynn, and to make false entries on the books of said company to the effect that certain amounts of money had been paid by said Flynn in the regular course of business to said company, by which false pretenses and false entries, said conspirators, in pursuance of said conspiracy, intended to cheat and defraud said Chicago Journal Company "of a large number of its said publications, to-wit, three hundred and forty thousand copies of the value of one half cent each."

It is urged in behalf of plaintiff in error, hereinafter referred to as the defendant, that the allegations are insufficient in an indictment for common law conspiracy. It is said the *gravamen* of the indictment is that the defendants conspired falsely to pretend that a large number of papers had been accounted and paid for, and to make false entries on the Journal Company's books to the effect that certain moneys had been paid by Flynn to the company. We are of opinion, however, that the *gravamen* lies in the allegations substantially to the effect that by means of "said false pretenses and false entries on the books" the defendants intended to defraud the company of a large number of its publications. A conspiracy is defined by defendant's attorneys to be "a corrupt agreement to do an illegal act, or to do a legal act by illegal methods." That the indictment charges a corrupt agreement to do an illegal act seems plain.

It is conceded by defendant's attorney that there is competent evidence tending to show in behalf of the State that Colvin and Flynn were employees of the Journal Company, Colvin as a bookkeeper and Flynn as a circulator; that it was Colvin's duty to keep the accounts of the several circulators; that a discrepancy was discovered in Colvin's book-

keeping, that an investigation was instituted, and that Colvin admitted he had been "doctoring" the books and keeping certain money which was paid to him, which he stated he received from the defendant Flynn. There is further evidence tending to show that Flynn when arrested said to the circulation manager of the Journal, "For Heaven's sake don't send me down South. If you do it will kill me"; that there were times when Colvin held him up for as much as $15 a week, and that he did not know whether there was "anyone else in it beside Colvin and himself." Flynn testifies that for about two or three months before Colvin came into the employ of the Journal Company, all his payments were made to the cashier, to whom he had been sent when he began his work in the employ of the company. He states that after Colvin came there, Colvin told him he was not to pay the cashier any more, but to pay him and that thereafter he paid Colvin every week. Flynn says that on one occasion when it was discovered he was short a certain amount Colvin said to him, speaking of the circulation manager, "Eckstrom is crazy. The books are all right." Flynn denies having said "For God's sake be easy with me," and denies asking that he be not sent South. He denies that he said he had paid Colvin as high as $15 a week and states that he told the circulation manager he had nothing to confess. There is evidence tending to show he had a good reputation for honesty in the neighborhood where he resides. There is evidence tending to show that Colvin kept the books in such a manner as to make it appear that Flynn's accounts for papers delivered to him were properly paid; that Flynn's "instructions were to collect for his papers and pay the cashier each week." It is admitted that Flynn did not do this but continued to pay to Colvin instead of to the cashier—evidence that doubtless had weight with the jury in reaching their verdict.

It is urged in behalf of the defendant that there was error in the admission of certain books of the company which were kept by Colvin, entries in which, it is said, were made by Colvin from a "blotter" kept in the shipping room, pur-

porting to show the number of papers delivered to the several circulators, including Flynn. It is not pointed out, however, in what way, if at all, the admission of such evidence was harmful to Flynn, and it was admissible, we think, as against Colvin to show his method of making the alleged fraudulent entries. In like manner Colvin's admissions, in which it was said he attempted to implicate Flynn, were competent against himself and the court ruled and instructed the jury that they were not to be considered as evidence against Flynn.

Complaint is made of certain instructions. These objections are general in their nature. The fourteenth instruction is the same as that referred to in Juretich v. The People, 223 Ill., 484–490. While the rule it announces is criticized in that case, the instruction itself is not treated as reversible error, and can not be so considered in the case at bar.

It was, we think, erroneous to instruct the jurors that if the evidence leaves a reasonable doubt in their minds as to the guilt of either of the defendants, they should find such defendant not guilty. We understand the law to be in a case where two are charged with conspiracy together that if one is not guilty neither is, since one can not conspire alone. But it is obvious that the instruction was not harmful in this case.

It is urged that while it was Flynn's account that was juggled, there is no evidence of conspiracy between him and Colvin. We have above referred to certain evidence which prevents our concurrence in this contention. We cannot say, in view of the testimony as to his alleged admissions, the undisputed evidence that he paid money to Colvin in disobedience of his instructions and paid practically none to the cashier, and the evidence that his account was so kept by Colvin as to conceal the fact of non-payment to the company, thus enabling Flynn to continue to obtain papers from the Journal Company, a part at least of the proceeds of which were paid to Colvin and practically none to the employer, that the verdict of the jury is not warranted by evidence.

The judgment of the Criminal Court must therefore be affirmed.

*Affirmed.*

MR. PRESIDING JUSTICE BAKER dissenting.