(No. 14039.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JOHN SHAW, Plaintiff in Error.

*Opinion filed December 22, 1921.*

1. CRIMINAL LAW—*error in date in caption of indictment is not material.* The caption is no part of an indictment, and where each count alleges that the offense was committed in 1920, an error in the caption which gives the date of the offense as 1901 is not material. (*Duncan* v. *People,* 1 Scam. 456, and *George* v. *People,* 167 Ill. 447, adhered to.)

2. SAME—*variance must be objected to on the trial.* An objection to a variance cannot be availed of on review in the Supreme Court where no objection was made on the trial.

3. SAME—*what proof is sufficient to establish venue.* It is not necessary that any witness shall testify in so many words that a crime was committed in a certain county in order to establish venue, and in a prosecution for the confidence game the venue is sufficiently established by testimony that the crime was committed while the defendant was in a store in Watseka, Iroquois county.

4. SAME—*what evidence of similar transactions is admissible in prosecution for confidence game.* In a prosecution for practicing the confidence game, evidence of similar transactions is admissible to prove guilty knowledge and criminal intent; and where the crime was committed by issuing a bogus express money order, it is proper to admit evidence that the defendant passed other bogus express money orders on the same day.

5. SAME—*when party issuing a bogus money order is guilty of confidence game.* Under the statute the confidence game is committed whenever money or property is obtained by means or by use of any false or bogus check, and where the defendant is proved to have obtained money on a bogus express money order which he issued in payment for merchandise, he may be convicted of the confidence game even though the merchant who accepted the order testifies that he relied upon its genuineness rather than upon his confidence in the defendant, who was a stranger to him.

6. SAME—*a new trial will not be granted to obtain testimony which is merely cumulative.* The court is not required to grant a new trial for the purpose of obtaining the testimony of a witness who was unable to attend the trial, where such evidence, if produced, would be merely cumulative on the question of an alibi, to which other witnesses had testified, and is not conclusive.

WRIT OF ERROR to the Circuit Court of Iroquois county; the Hon. FRANK L. HOOPER, Judge, presiding.

STEPHEN C. MALO, and ROSCOE C. SOUTH, for plaintiff in error.

·EDWARD J. BRUNDAGE, Attorney General, ELMER A. TAYLOR, State's Attorney, and SUMNER S. ANDERSON, for the People.

.Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The plaintiff in error, Eugene O. Shaw, was indicted in the circuit court of Iroquois county under the name of John Shaw, alias A. W. Shaw, for obtaining money and property from Charles E. Edinger by means and use of the confidence game. The first and fourth counts charged, in general language, obtaining the money and property by means and use of the confidence game, and the second and third charged him with obtaining the money and property by means of a false and bogus express money order.

There was a motion to quash the indictment, which was overruled, and the objection to the indictment which is alleged in support of· the motion is that the caption was to the March term, 1901, which was not within the Statute of Limitations. Whether or not it would make any difference if the date alleged in an indictment is beyond the Statute of Limitations, it is conceded that it has always been the rule of this court that the caption is no part of the indictment, as decided in *Duncan* v. *People,* 1 Scam. 456, and *George* v. *People,* 167 Ill. 447. Counsel are of the opinion that those decisions were wrong and should be overruled, but we are not convinced that they were incorrect, and the indictment in this case in each count alleged the commission of the crime on the 16th day of October, 1920. The court did not err in overruling the motion.

On Saturday night, October 16, 1920, at about eight o'clock, a man came to the store of Charles E. Edinger, in Watseka, Iroquois county, in an automobile with a woman, who drove the car away. The man entered the store and made a purchase of Edward Mayrand, a clerk, of a pair of No. 8 shoes for $5 and tendered an American Express Company order for $50 payable to John Shaw. Mayrand referred the man to Edinger, the proprietor, who did not have enough money to cash the order, but he obtained it from a friend next door and gave the man the shoes and $45 in currency. The man indorsed the order with the name "John Shaw," and it turned out to be a bogus order, which the express company refused to honor. The defendant was positively identified by Mayrand and Edinger as the person who committed the crime. He denied that he was the person who obtained the money and property or that he was in Watseka at the time, and he offered evidence of other witnesses to prove an alibi. He was a photographer engaged in the business of taking pictures of small children and exhibiting them at moving picture shows, and he lived at the Illinois Hotel in Danville, forty-six miles from Watseka, from October 12 to November 3, 1920, when he left and went to Tulsa, Oklahoma. He was arrested and brought to Danville and tried there upon a charge of passing bogus money orders at that place, but was acquitted and again arrested and taken to Watseka, where he was tried and convicted. Three employees of the Illinois Hotel at Danville testified to his presence there on October 16 with the exception of the time from about 6:30 in the evening to 9:30 or 10 o'clock. He also obtained from the post-office in Danville, between one and three o'clock in the afternoon of October 16, two packages, and there were no trains from Danville to Watseka that afternoon or evening upon which he could have gone to Watseka. A witness for the People testified that he had gone by automobile from Danville to Watseka in an hour and thirty-five minutes. L. S. Lund-

berg, a haberdasher at Watseka, testified that he cashed an American Express money order on Saturday night, October 16; that the man who presented it wrote "John Shaw" on the back, and that the defendant was not the man who did it but was one Rougeau, who had been connected with the defendant in his business and who went with him to Tulsa, Oklahoma. There was evidence of the previous good reputation of the defendant, but it will readily be seen that the judgment cannot be reversed for a lack of evidence to sustain the charge in the indictment.

It is contended, however, that there was a variance between the charge and the proof. The order cashed was a money order of the American Express Company, and the second count alleged obtaining money and merchandise to the amount of $50 by means of a false and bogus American Express money order, the property of Charles E. Edinger. The objection that there was a variance cannot be availed of now because there was no objection on the trial, (*People* v. *Weisman*, 296 Ill. 156,) but if the objection were entertained it would only be good as to the second count. There was no variance between the proof and the first, third or fourth count.

It is urged that the venue was not proved, but that is not so. The testimony was that the store was in Watseka, Iroquois county; that the defendant came into that store and the crime was there committed. It is not necessary that any witness should testify in so many words that a crime was committed in a certain county in order to establish the venue. (*Weinberg* v. *People*, 208 Ill. 15; *People* v. *Schmidt*, 292 id. 127.) The proof was clear that the crime in this case was committed in Iroquois county.

The court admitted evidence that the defendant passed other bogus American Express money orders in Watseka in the evening of October 16, 1920,—one for an inner tube and cash and another for merchandise and cash,—and this is alleged as error because the transactions were independ-

ent of the one charged in the indictment. In a prosecution for practicing the confidence game, evidence is admissible of similar transactions to prove guilty knowledge and criminal intent. *DuBois* v. *People,* 200 Ill. 157; *People* v. *Weil,* 244 id. 176; *People* v. *Donaldson,* 255 id. 19; *People* v. *Strosnider,* 264 id. 434; *People* v. *Crawford,* 278 id. 134.

The principal argument is that the judgment was wrong because the offense under the confidence game statute was not proved. It is based on the testimony of Edinger, who said that he cashed the bogus money order and gave the shoes and cash to the defendant, not because of any confidence which he reposed in the defendant but because he had confidence in the money order which was presented to him. He testified that the defendant being a stranger he did not have any acquaintance with him and knew nothing about him but had confidence in the money order, which means that he gave the money and shoes to the defendant because he believed it to be genuine and not bogus and forged. The statute is as follows: "Every person who shall obtain or attempt to obtain from any other person or persons any money, property or credit by means or by use of any false or bogus check or by any other means, instrument or device commonly called the confidence game, shall be imprisoned in the penitentiary not less than one year nor more than ten years." (Crim. Code, sec. 98.) It defines the crime as obtaining or attempting to obtain money or property by means or by use of any false or bogus check, which is specific, and then adds in general terms the means or use of any instrument or device commonly called the confidence game. The crime is committed whenever money or property is obtained by means or by use of any false or bogus check, and in construing the statute as applied to obtaining money or property by any other means, the statute has been construed as limited to those means, instruments or devices commonly called the confidence game. So construed, the crime embraces a very wide range of such means,

instruments or devices, and the decisions relied upon in support of the argument relate to cases in which it is a necessary element that confidence is reposed in the swindler to bring his act within the common meaning of the words "confidence game." In *Maxwell* v. *People,* 158 Ill. 248, there was an argument that the remainder of the section, after mentioning the specific method of committing the crime by false or bogus checks, limited the section to the use of other false or bogus commercial paper or paper of the same class as checks, but this was denied on the ground that the section was intended to embrace other means beside the use of false or bogus checks if such means came within the definition of what is commonly called the confidence game, aside from the use of false or bogus checks or paper of a similar kind. The confidence game was defined as a swindling operation in which advantage is taken of the confidence reposed by the victim in the swindler. In *Juretich* v. *People,* 223 Ill. 484, the defendant wrote a bogus check by which he obtained credit on a bill and cash for the balance, and the argument that obtaining money by bogus check was not practicing the confidence game, within the meaning of the statute, unless money is obtained under circumstances amounting to what is commonly called the confidence game, was not sustained, but it was held that there could be a conviction where a bogus check was used. In *People* v. *Dempsey,* 283 Ill. 342, the instrument used was what was called a traveler's check or circular note which was for the payment of $50 and issued by Thomas Cook & Sons, bankers at Albany, New York. It was a genuine traveler's check or circular note, but it had been lost and the indorsement was a forgery, and it was regarded as a false or bogus check within the meaning of the statute. The word "check" has a great variety of meanings, and the statute has always been construed as including any instrument similar to a bank check or draft of the nature of commercial paper for the payment of money, and the

false and bogus money order in this case came within the statute. Edinger relied upon the instrument as genuine and his belief that the defendant was the John Shaw to whom it was payable. Any other conclusion is inconceivable, and the fact that he did not know the defendant or depend upon his financial responsibility is of no importance.

Complaint is made of the fact that the court gave five instructions relating to the subject of reasonable doubt, and while the practice has been criticised and condemned, it has never been ground for reversal where the rules of law were correctly stated, as they were in this case.

The court gave an instruction concerning the extent of the proof of an alibi to cover the whole time of the commission of the crime, which was correct, but it is said that the court erred in giving it because the evidence showed it to be impossible for the defendant to be in Watseka when the crime was committed and the instruction conveyed to the minds of the jury that there was no merit in the defense. The People were entitled to have the jury advised as to the law concerning proof of an alibi regardless of the view of the defendant or his counsel as to the sufficiency of his proof.

There was no error in refusing an instruction asked by the defendant as to the force or effect of any single fact proved by the defendant in the case and not as to a reasonable doubt arising on the whole evidence.

There was a motion for a new trial based on the absence of a woman who was not the wife of the defendant but who lived with him and occupied a room with him at the Danville Hotel. It was alleged that the defendant was unable to procure her attendance at the trial and that she would by her testimony support the defense of an alibi. The testimony, if produced, would be cumulative and not conclusive, and the court was not required to grant a new trial to secure her attendance in the future.

The judgment is affirmed.        *Judgment affirmed.*