(No. 31515.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* PETER SCERI, Plaintiff in Error.

*Opinion filed September 21, 1950—Rehearing denied Nov. 17, 1950.*

ROMAN E. POSANSKI, (CHARLES D. SNEWIND, of counsel,) both of Chicago, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (JOHN T. GALLAGHER, and RUDOLPH L. JANEGA, both of Chicago, of counsel,) for the People.

Mr. Justice Wilson delivered the opinion of the court:

The defendant, Peter Sceri, was indicted in the criminal court of Cook County for obtaining $250 in money from the Broadway Currency Exchange, Incorporated, by means of the confidence game. A jury found defendant guilty, as charged, and he was sentenced to imprisonment in the penitentiary for a term of not less than one year nor more than three years. Defendant prosecutes this writ of error.

There is but little, if any, dispute as to the essential facts. On July 12, 1949, at 9:00 P.M., the defendant, together with Joseph Masteretti, and a third man referred to only as Frank, arrived in Chicago by airplane from New York City. The three visitors registered at the Midland Hotel. Shortly thereafter, Masteretti exhibited a large number of blank money orders of the American Express Company, said that they would need money, and that he was going to issue a few. The money orders in blank form had been stolen from the American Express Company in a burglary committed in Philadelphia. When stolen, there were no names on them, no payee, no address and no written sums. Either upon repairing to their room at the Midland Hotel, or before leaving New York, defendant was given an identification card with the name "Frank Greco" on it. Upon leaving New York City, the defendant had passport and chauffeur's license photographs taken. Masteretti supplied defendant with a chauffeur's license, to which he attached his photograph from his own license, an army registration card and an automobile registration card, the license and the two cards being made out in the name of Frank Greco. From police officer Joseph Goldberg's testimony it appears that all the money orders were signed by defendant when he first went to the room at the Midland Hotel.

Early in the morning of July 13, defendant, with the "credentials" described, accompanied by Masteretti, registered under the name of Frank Greco at the Stevens Hotel

in Chicago. He also registered at the Belmont Hotel, again using the name of Frank Greco. The purpose of this triple hotel registration, it appears, was to use two hotels in each instance against the third for the purpose of identification, so that defendant and his companions could readily cash the money orders in their possession. To facilitate their objective, they rented an automobile and, some time during the day of July 13, tore a page from the classified telephone directory containing the names and addresses of various currency exchanges. Defendant would go to one currency exchange and one of his two companions to another exchange, the third remaining in the automobile which they had rented.

Between 5:00 and 5:30 in the afternoon of July 13, defendant presented five American Express money orders for $50 each to Aaron Danielson, president of the Broadway Currency Exchange, to be cashed. To Danielson's request for proper identification, defendant answered that he was registered at the Stevens Hotel, occupying room 817, presented a New York automobile driver's license made out in the name of Frank Greco, and, when asked for further identification, exhibited a New York automobile registration or title card, which had the name of Frank Greco on it, and, also a United States Army registration card issued in the same name. Defendant affixed his signature to the orders in Danielson's presence, his second signatures matching his first signatures. Danielson placed upon the reverse side of the money orders memoranda, including the army registration and New York chauffeur's license registration numbers given him and, also, the New York City address of Frank Greco, namely, 303 Fifth Avenue, which he copied from the registration cards. Danielson, who had never seen defendant prior to July 13, testified that, upon being satisfied of his identity as Frank Greco, he cashed the five orders, giving defendant $250, less the currency exchange fee of $1.50. Specifically, Danielson testified he

was confident that defendant was Frank Greco and, hence, the proper person to whom to pay the proceeds of these orders. Two or three minutes after defendant's departure, Danielson telephoned the Stevens Hotel for confirmation of his registration as one of its guests. The Broadway Currency Exchange never received any money for the orders cashed by defendant.

On the same day, July 13, defendant cashed another American Express money order for $50 at the Stevens Hotel. The assistant manager asked for identification. Here, as in the first transaction described, defendant presented the automobile driver's license bearing the name Frank Greco, 303 Fifth Avenue, New York City, and stated that he (Greco) was listed in the New York telephone directory. The assistant manager of the Stevens Hotel checked the New York Manhattan directory and found a Frank Greco listed at the address given by defendant and thereupon "o.k.'d" the money order. His identity established as Greco, defendant cashed the check.

Defendant cashed a money order for $50 at the Belmont Hotel, then went to a fourth hotel, the Sheraton, where he attempted to cash more money orders, requesting that the Stevens Hotel be called to verify his identification. Although the record is not clear as to whether he succeeded in his attempt to cash additional money orders at the Sheraton Hotel, he was successful elsewhere. He cashed four money orders at the Clark-Wrightwood Currency Exchange and two at the Northwestern Terminal Exchange, each order being for $50. It thus appears that, on July 13, defendant cashed five American Express Company money orders at the Broadway Currency Exchange; one at the Stevens Hotel, one at the Belmont Hotel, four at the Clark-Wrightwood Currency Exchange, and two at the Northwestern Terminal Currency Exchange, all of the thirteen money orders mentioned being spurious.

The money orders cashed by defendant were identified as the orders bearing the same serial numbers as those in the original report of loss in the burglary at Philadelphia. The company refused to pay the money orders and stopped payment on them.

When apprehended on July 14, defendant talked quite freely to the arresting officers, recounting the circumstances previously described. His testimony does not differ in any material respect from that of the witnesses for the prosecution. Illustrative is his testimony that, upon arriving at the Belmont Hotel, Masteretti directed him to register as Frank Greco again; that he asked, "What do you want to do that for? I just registered [at the Stevens Hotel] as Frank Greco;" that Masteretti was so persistent he went in and registered; that "When I got back to the car this fellow Frank had a yellow piece of paper, looked like it was taken out of the classified directory;" that Masteretti and Frank were talking about money exchanges; that, to his protestation, "Look, I don't like the idea, I don't like to do that," Masteretti answered, "What are you worrying about? They are easy to change; * * * you need money. I will give you $30 for every $100 you change," and that he agreed to do as requested, and, as he says, "From there we started hitting the money exchange places until I was arrested on Clark Street." When officer Goldberg told defendant the money orders had been stolen in Philadelphia, he denied participating in the burglary, adding, "All I know is I was asked to come to Chicago and make a little money and I needed it and the first I saw of these money orders was when they were unpacked from the suitcase."

Defendant makes two principal contentions. Of these, the first is that the trial court erred in permitting evidence to be introduced of other crimes allegedly committed by defendant. In a prosecution for practicing the confi-

dence game, evidence of similar transactions is admissible to prove guilty knowledge and a specific criminal intent. (*People* v. *Marmon*, 389 Ill. 19; *People* v. *Shaw*, 300 Ill. 451; *People* v. *Cathony*, 376 Ill. 260.) In particular, where the crime was committed, as here, by issuing bogus American Express money orders, evidence is admissible that the defendant passed other bogus express money orders on the same day. *People* v. *Shaw*, 300 Ill. 451.

Defendant's second contention is that the evidence is insufficient to sustain the conviction of obtaining money by means of the confidence game, his point being that, although he may have been guilty of obtaining money by false pretenses, a lesser criminal offense, he is not guilty of the greater crime, operating a confidence game. Section 98 of division I of the Criminal Code declares, "Every person who shall obtain or attempt to obtain from any other person or persons any money, property or credit by means or by use of any false or bogus check or by any other means, instrument or device commonly called the confidence game shall be imprisoned in the penitentiary not less than one year nor more than ten years." (Ill. Rev. Stat. 1949, chap. 38, par. 256.) Any scheme whereby a swindler wins the confidence of his victim and then cheats him out of his money by taking advantage of the confidence reposed in him is a confidence game. (*People* v. *Bimbo*, 369 Ill. 618; *People* v. *Angelica*, 358 Ill. 621; *People* v. *Shaw*, 300 Ill. 451; *Juretich* v. *People*, 223 Ill. 484.) The gist of the crime is the obtaining of the confidence of the victim by some false representation or device. (*People* v. *Bimbo*, 369 Ill. 618.) The character of the crime of obtaining money by means of the confidence game is not affected by, and is complete irrespective of, the amount, kind or value of money obtained. *People* v. *Clark*, 256 Ill. 14.

*People* v. *Shaw*, 300 Ill. 451, closely parallels the present case. In the case cited, the defendant, Shaw, entered

the store of a merchant, Charles R. Edinger, in Watseka, bought a pair of shoes for $5, and tendered in payment an American Express Company money order for $50, payable to John Shaw. Edinger gave the man the shoes and $45 in money and the latter indorsed the order "John Shaw." The order was spurious and the express company refused to honor it. In affirming the judgment of conviction of practicing the confidence game, referring to the word "check" employed in the statute, this court observed, "The word 'check' has a great variety of meanings, and the statute has always been construed as including any instrument similar to a bank check or draft of the nature of commercial paper for the payment of money, and the false and bogus money order in this case came within the statute. Edinger relied upon the instrument as genuine and his belief that the defendant was the John Shaw to whom it was payable. Any other conclusion is inconceivable, and the fact that he did not know the defendant or depend upon his financial responsibility is of no importance."

In the present case, incontrovertible proof discloses that, by the use of American Express Company money orders, bearing the signature "Frank Greco," written by defendant, and by defendant's affirmative representations that he was Frank Greco, he won the confidence of Danielson who operated the Broadway Currency Exchange and, as the direct result of the latter's misplaced confidence, consummated the swindling operation by obtaining $248.50 belonging to the currency exchange company. We regard the factual situation as even stronger than the one presented in *People v. Shaw*. Here, we have not only the use of the money orders of the express company and the good will which the company enjoys generally but, also, the deliberate and calculated use of a false United States Army draft registration card, a New York State automobile registration card and a New York chauffeur's license, and the statement, admittedly true, that he was registered at the Stevens

Hotel,—but under an assumed name. Danielson placed confidence in the person appearing before him in consequence of the swindler's presentation of the money orders payable to Frank Greco, the army and automobile cards, the chauffeur's license, and the fact that defendant was registered at a well-known hotel in Chicago. Defendant, on the other hand, used the money orders, the army and automobile registration cards, and the chauffeur's license, for the purpose of winning the confidence of the victim. Having obtained the confidence of his victim by fraudulent means, defendant then obtained the latter's money through a betrayal of that confidence. The evidence abundantly proves defendant guilty of obtaining money belonging to the Broadway Currency Exchange by means of the confidence game.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*