(No. 19654.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK EPSTEIN, Plaintiff in Error.

*Opinion filed February 21, 1930—Rehearing denied April 3, 1930.*

J. D. WILSON, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, LESTER K. VANDEVER, State's Attorney, and ROY D. JOHNSON, (HARRY C. MILLER, of counsel,) for the People.

Mr. JUSTICE HEARD delivered the opinion of the court:

In the circuit court of Montgomery county plaintiff in error, Frank Epstein, was indicted, tried and sentenced to the penitentiary on an indictment for obtaining the property of Barney R. Donaldson by means of the confidence game. The case is here for review on writ of error.

It is contended that the court erred in overruling plaintiff in error's motion to quash the indictment. The statute prescribes the form of a confidence game indictment. The indictment in this case conforms strictly to the statutory form and was sufficient. *People* v. *Sawhill,* 299 Ill. 393; *People* v. *Miller,* 278 id. 490.

There was a coal mine at Nokomis, Illinois, owned by the Indiana and Illinois Coal Corporation, called Mine No. 10, in which there were between 800 and 900 men employed in mining coal, and in the years 1925 and 1926, while this mine was in operation, plaintiff in error was, under the rules and regulations of the miners' union and its association with the coal company, elected and acted as check weighman. A check weighman is a man who represents the miners' union and stands at the top of the tipple and weighs and keeps a record of all coal that comes out of the mine. At the same time that he is doing this work a person representing the coal company, called a weigh boss, does practically the same work as the check weighman, but he does it for and is paid by the coal company while the check weighman is paid by the members of the local union. When a man went to work for the company

he was given a check number, and when he loaded coal he attached to each load his check number. When the coal came to the top of the tipple for unloading it was weighed by the check weighman and the weigh boss and a record made of the weight by each, which was assigned on the weigh sheet to the man whose name corresponded to the check number on the card. At times there would be more coal credited to a miner's check number than he mined. According to the custom and regulation of the union, whenever a car of coal was lost and the man to whom the coal belonged could not be found it was given and assigned to what was called the "check weigh fund," out of which the check weighman was paid. The evidence shows that a check weighman by custom sometimes adjusted the differences, although it was not regularly a part of his duty. If he found, upon complaint, that somebody was short a car or two of coal and some other miner was long,—that is, had two or three cars credited to him which he did not load,—he would make an effort to adjust the matter. He would take the credit from the man to whom it had been wrongfully given and give credit to the man who loaded the car and who was entitled to the coal. In the instant case the testimony of B. R. Donaldson showed that he had more coal credited on his check number than he had actually mined, and he spoke to plaintiff in error several times and requested him to make the adjustment. The pay for lost cars credited to the check weigh fund is turned over to the local union. The check weighman is not authorized to collect the same. After Donaldson had received the pay for the coal credited to him, including the car mistakenly credited to him, he deposited it in his bank account in the Witt National Bank at Witt. Plaintiff in error went to Witt on February 5, 1926, where he informed Donaldson that he knew who had loaded the coal for which Donaldson had been wrongfully paid; that he could not recall the man's name but had it at home. He requested

Donaldson to write a check for $24, leaving the name of the payee blank, and promised to insert therein the name of the person who had loaded the coal in question and deliver the check to him. Contrary to his promise, on the same day he went to the Witt National Bank, inserted his own name as payee, endorsed the check and received $24 for the same.

The gist of the crime of obtaining money or property by means of the confidence game is the obtaining of the confidence of the victim by some false representation or device, and where the confidence is honestly obtained through a course of regular business dealings but the one in whom confidence is reposed betrays that confidence to the injury of the other, the confidence game statute is not applicable and a conviction thereunder cannot stand. (*People* v. *Friedlander,* 328 Ill. 35; *People* v. *Heinsius,* 319 id. 168.) The confidence game consists of gaining possession of money or property by some trick or device or swindling operation by which advantage is taken of the confidence which the victim has reposed in the swindler. A mere confidence reposed without a swindling operation does not constitute the confidence game. (*People* v. *Rosenbaum,* 312 Ill. 330.) Unless it be proved that the confidence of the prosecuting witness or victim is obtained by false representations for the purpose of obtaining his money, and that the confidence thus reposed is betrayed by swindling or taking from the victim some money, property, etc., the confidence game is not established. (*People* v. *Snyder,* 327 Ill. 402; *People* v. *Benton,* 324 id. 331.) Where the evidence shows that the defendant took advantage of the confidence reposed in him by a third party and defrauded the latter of his property by a swindling scheme, it is no defense that the scheme took the form of a business transaction. (*People* v. *Bertsche,* 265 Ill. 272.) Any scheme whereby a swindler wins the confidence of his victim and swindles him out of his money or property by tak-

ing advantage of such confidence is the confidence game, and if the transaction is, in fact, a swindling operation, it is immaterial that the form assumed is that of a lawful business transaction. Where a party makes a positive representation to another of a fact he knows to ·be untrue or uses an instrument which he knows to be false as a representation of facts and thereby secures the confidence of his victim by such representation, such cases come within the rule concerning the confidence game. (*People* v. *Poole*, 310 Ill. 345; *People* v. *Harrington*, id. 613; *People* v.· *Singer*, 288 id. 113.) Plaintiff in error secured Donaldson's confidence by falsely representing to him that he knew to whom the credit belonged and that he would fill in the man's name in the blank left for the name of the payee. Donaldson evidenced his confidence in plaintiff in error by giving him the check with the name of the payee left blank. Plaintiff in error abused this confidence by filling the blank with his own name, cashing it and appropriating the cash. He was guilty of obtaining property by means and use of the confidence game.

It is claimed by plaintiff in error that the fact that the accused has traveled under an assumed name should not be allowed to be proved where such fact has no connection with the offense charged and no tendency whatever to prove its commission. An ex-sheriff testified to going to Pennsylvania and bringing Epstein home and that he found him there under an assumed name. This testimony was received without objection and was uncontradicted.

In his closing argument to the jury the State's attorney said, "No witness denies Frank Epstein obtained the money on that check." Notwithstanding the fact that plaintiff in error did not testify that he had not obtained this property, it could have been proven by the bank officials had he not done so. This was not an unwarranted reference to the failure of plaintiff in error to testify. *People* v. *Birger*, 329 Ill. 352.

Complaint is made as to the giving of some of the instructions. The one as to what constitutes the confidence game conforms to what we have said in this opinion. An instruction to the effect that if the jury believe from the evidence that the defendant, immediately after the commission of the crime with which he stands charged, fled and remained away until taken into custody, such flight is a proper circumstance to be considered in determining the guilt or innocence of the defendant, has been held proper by this court. *People* v. *White,* 311 Ill. 356; *Siebert* v. *People,* 143 id. 571.

The court properly overruled plaintiff in error's motion for a new trial, and the judgment of the circuit court is affirmed.

*Judgment affirmed.*