# JOHN M. RUCKER v. STATE.

No. A-10801.   June 16, 1948.

Opinion on Rehearing and Petition for Rehearing
Denied Nov. 3, 1948.

(195 P. 2d 299; 199 P. 2d 221.)

R. A. Wilkerson, of Pryor, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, J. This is an appeal by John M. Rucker defendant below from the district court of Rogers county, Oklahoma, wherein he was charged, tried, convicted and sentenced to a term of five years and one day in the penitentiary on a charge of obtaining $4,100 from Frank

Dowell by means of what is known as a "confidence game" under the provisions of Title 21 O.S.A. 1941 § 1541, the pertinent portions of which are set out as follows:

"Every person who, with intent to cheat and defraud, shall obtain or attempt to obtain from any person, firm or corporation, any money, property, or valuable thing, of the value of Twenty ($20.00) Dollars, or less, by means or by use of any trick or deception, or false or fraudulent representation, or statement or pretense, or by any other means or instrument or device commonly called the 'confidence game,' or by means or use of any false or bogus checks, or by any other written or printed or engraved instrument or spurious coin, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not to exceed One Hundred ($100.00) Dollars, or by imprisonment in the county jail for not more than thirty (30) days, or by both such fine and imprisonment. If the value of the money, property or valuable thing referred to in the preceding paragraph, be more than Twenty ($20.00) Dollars, any person convicted hereunder shall be deemed guilty of a felony and shall be punished by imprisonment in the State Penitentiary, for a term not exceeding seven (7) years, or by a fine not to exceed Five Hundred ($500.00) Dollars, or by both such fine and imprisonment. * * *"

This section of the statute defines several offenses but we are here concerned only with the crime of the confidence game as limited by the express language of both the statute and the allegations of the complaint. The purpose of this statute was to provide for a class of false representations not included in some of the other sections dealing with the subject of ordinary false representations. It was intended to reach a class of offenders known as "confidence men" who obtain the money of their victim by means of, or by the use of some trick, scheme or artifice designed to deceive and to defraud. The very es-

sence of the crime under Section 1541 is that the injured party must have relied upon some false or deceitful pretense or device and parted with his property upon his confidence thus having been misplaced. It should not be confused with false pretenses, although the element of false pretenses obviously enters into the "confidence game". People v. Gould, 363 Ill. 348, 2 N. E. 2d 324; Clark v. State, 53 Ariz. 416, 89 P. 2d 1077. In the latter case the Arizona court said:

"In every 'confidence game,' a false pretense is involved, but every 'false pretense' does not involve a confidence game, and crime of 'confidence game' is not established by mere proof that property has been obtained by false pretense.

"A 'confidence game' is, generally speaking, any swindling operation by means of which advantage is taken of the confidence reposed by the victim in the swindler."

That court quoted from 25 C. J. 661, as follows:

" 'In several jurisdictions there are statutes directed against what is known as the "confidence game," which can hardly be defined in a manner which will cover all cases for the reason that schemes, the purposes of which is to swindle others "are as various as the mind of man is suggestive." Generally speaking it is any swindling operation by means of which advantage is taken of the confidence reposed by the victim in the swindler. Any scheme whereby a swindler wins the confidence of his victim and swindles him out of his money by taking advantage of such confidence is a confidence game. A swindling operation does not, however, constitute a confidence game unless the element of confidence becomes a part of such swindling.' " See also, 35 C. J. S., False Pretenses, § 32.

The confidence of the victim may be gained in either of two ways, either because of the confidence in the

person of the swindler or confidence in the device used to effect the swindle. People v. Shaw, 300 Ill. 451, 133 N. E. 208. It is sufficient to say that there must be a trick, device, false representation or swindling operation by means of which the confidence of the victim is won. 35 C. J. S., False Pretenses, § 32. For the charge and conviction based upon the confidence game to be sustained, we must keep these distinctions in mind in considering the contentions of the defendant in relation to the sufficiency of the second amended information.

Based upon the foregoing section of the statutes this prosecution was instituted by complaint. The charging portion of the complaint reads as follows:

"* * * That between Aug. 21, 1945 and August 29, 1945, both inclusive in the County of Rogers and state of Oklahoma, one John M. Rucker, Bodine Loyd, and Frank Falkner (alias Compton) and there being, did then and there, wilfully, unlawfully and feloniously then acting conjointly and together and with a premeditated intent and design on the part of them to cheat and defraud one Frank Dowell, and said defendants did so cheat and defraud the said Frank Dowell by obtaining from the said Frank Dowell between the said dates of August 21, 1945, and August 29, 1945, both inclusive, and on and between such dates by continuous activities, as above alleged, the sum of $8100.00, lawful money of the United States of America and of the value of $8100.00 by means and use of a certain trick and deception and false and fraudulent representations and statements and pretenses and instruments and devices commonly called the 'Confidence game' as defined in Section 1541 of Title 21, Oklahoma Statutes 1941. They, the said defendants, knowing at the time that their said representations and statements were false, untrue and fraudulent and made for the purpose of and with the intent of them to cheat and defraud the said Frank Dowell of his said money contrary to the forms of the Statutes in such cases made and

provided against the peace and dignity of the state of Oklahoma. * * *"

Upon this complaint J. M. Rucker was given a preliminary hearing before William H. Fry, justice of the peace, and upon conclusion thereof the defendant was bound over to the district court of Rogers county, Oklahoma.

Thereupon the defendant John M. Rucker was charged by information the same being almost verbatim as that laid in the complaint. To this information the defendant demurred which was by the court overruled.

Thereafter the State filed an amended information, the charging portion of which reads as follows:

" * * * on or about the 22nd day of August, A. D., 1945, in the County of Rogers, State of Oklahoma, one John M. Rucker, Bodine Loyd, and Frank Falkner, (alias Compton) did then and there willfully and unlawfully, acting conjointly and together, and with a premeditated intent and design on the part of the said defendants and each of them to cheat and defraud one Frank Dowell of the sum of $4000.00, good and lawful money of the United States of America, did obtain from the said Frank Dowell, on or about the date named above, the sum of $4,000.00, good and lawful money of the United States, while so acting together with a premeditated intent and design on the part of them as above set out, by means and use of a certain trick and deception and false and fraudulent representations and statements and pretenses and instruments and devices commonly called the 'confidence game' as defined in Section 1541 of Title 21, O. S. 1941, they, the said defendants, knowing at the time that their said representations and statements were false, untrue and fraudulent and made for the purpose of and with the intent of them, the said defendants, to cheat and defraud the said Frank Dowell of the said money. The said Frank Dowell, relying upon their said statements so made to

him, implicitly, and by the use of said certain trick and deception and fraudulent representations and statements and pretenses and instruments and devices commonly called the 'confidence game', and by the reliance of the said Frank Dowell upon such as being true, and believing the same to be true, did part with the said sum of $4000.00 to them, the said defendants, as above set out, in manner and form as follows, to-wit:

"That on the 21st day of August, 1945, and just prior thereto, the said defendants, John M. Rucker, Bodine Loyd, and Frank Falkner alias Compton, confederated together for the purpose of making, forming, and using a certain game known as a 'confidence game' with the intent to take from the said Frank Dowell the said sum of money, fraudulently and by the said confidence game and scheme, they, the defendants, agreed between themselves that the defendant Bodine Loyd would contact the said Frank Dowell and advise him that the defendant John M. Ruckner owned a certain valuable oil and gas lease in the State of Nebraska, and that he was wanting to dispose of the same, and that the said lease was worth more on the market than the said defendant Rucker was willing to take for it, and that there was a certain representative of the Texas Oil Company, an oil corporation, then in the City of Claremore, Rogers County, Oklahoma, who had with him a bank draft or check from his company in the sum of $9800.00 which he desired to pay for the said lease, or an assignment thereof, and that in his judgment the same could be purchased for a less sum, all of which the said defendant Bodine Loyd did.

"The defendant Loyd at said time had with him and displayed to the said Frank Dowell, as a part of the scheme and trick being used by the defendants, a certain draft or check from the said oil company in the sum of $9800.00, which he advised the said Dowell that the defendant Frank Falkner, alias Compton, had with him for the purpose of purchasing the said lease or assignment thereof, and that immediately upon his purchase of the lease or assignment from the defendant John M. Rucker, that the

defendant Frank Falkner, alias Compton, would turn over to him the said check for $9800.00 for an assignment from Dowell to the said oil company.

"The said check was given to the said defendant Bodin Loyd by the defendant Frank Falkner, alias Compton, to whom the defendant Loyd had been sent by the defendant John M. Rucker, for the purpose of being used to cheat and defraud the said Dowell of his said money.

"Upon such representations and the showing of the said instrument purporting to be a check or draft from the said oil company, and relying upon such statements and instruments to be genuine and believing the same to be truthful and genuine and that he could make a profit upon the purchase of the said oil and gas lease, or assignment thereof, the said Dowell did, on the 22nd day of August, 1945, part with his said $4000.00 in good and lawful money of the United States of America to the defendant John M. Rucker for an assignment of the said oil and gas lease, believing and trusting implicitly that he could, as he was told and informed by the defendant Loyd, sell the same to the said oil company at and for a profit to himself of $5800.00

"And that the defendant Loyd advised the said Dowell that he had at all times during the said transactions still within his possession the said check or draft in said amount, and that the same would be turned over to the said Frank Dowell for an assignment of the lease to the company of the said defendant Frank Falkner, alias Compton, immediately after he had received the same from the defendant John M. Rucker, but instead thereof, after he had parted with his money for the purchase of the said lease from the defendant Rucker, both the said defendant Loyd and the defendant Frank Falkner, alias Compton, disappeared, or failed to appear, and to purchase from him his said lease or an assignment thereof, and have never at any time complied with their said representations, promises and agreements; all of the said statements and representations to the said Dowell by the defendants

24

being made without intention to perform any of the same, and with intent not to perform the same, but made wholly for the purpose of defrauding the said Dowell of his money as was done in the said cause, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the State of Oklahoma. * * *

"Count Two: Also be it remembered that H. P. Daugherty, County Attorney, in and for the County of Rogers, State of Oklahoma, who prosecutes in the name and by the authority of the State of Oklahoma, comes here in person into the District Court of said County this 28th day of December, A. D. 1945, and gives the Court to understand and be informed that on or about the 29th day of August, 1945, in the County of Rogers and State of Oklahoma, the defendants John M. Rucker, Bodine Loyd, and Frank Falkner, alias Compton, did then and there willfully and unlawfully, acting conjointly and together and with a premeditated intent and design on the part of the said defendants and each of them to cheat and defraud one Frank Dowell of the sum of $4100.00, good and lawful money of the United States of America, and did obtain from the said Dowell on or about the date named above the sum of $4100.00, good and lawful money of the United States of America, while so acting together with a premeditated intent and design on the part of them as above set out by means and use of a certain trick and deception and false and fraudulent representations and statements and pretenses and instruments and devices commonly called the 'confidence game' as defined in Section 1541 of Title 21 of O. S. 1941, they, the said defendants, knowing at the time that their said representations and statements were false and untrue and fraudulent and made for the purpose of and with the intent of them, the said defendants, to cheat and defraud the said Frank Dowell of the said money. The said Frank Dowell relying upon their said statements so made to him, implicitly, and by the use of said certain trick and deception and fraudulent representations and statements and pretenses

and instruments and devices commonly called the 'confidence game', and by the reliance of the said Frank Dowell upon such as being true and believing the same to be true did part and the said sum of $4100.00 to them, the said defendants, as above set out in manner and form as follows, to-wit:

"That on the 29th day of August, 1945, and just prior thereto, the said defendants, John M. Rucker, Bodine Loyd and Frank Falkner, alias Compton, confederated together for the purpose of making, forming, and using a certain game known as a 'confidence game' with the intent to take from the said Frank Dowell the said sum of money, fraudulently and by the said confidence game and scheme, they, the said defendants, agreed between themselves that the defendant Frank Falkner, alias Compton would contract the said Frank Dowell, who had just purchased of and from the defendant John M. Rucker a certain assignment of oil and gas mining lease as set out in Count One herein, and advise him, the said Dowell, that he, the said defendant Frank Falkner, alias Compton, was the representative of the Texas Oil Company who had been mentioned and referred to as desiring to purchase the lease named and mentioned in Count One hereof purchased by the said Dowell from the said defendant John M. Rucker, and at said time advised the said Dowell that he was ready to purchase an assignment of the said oil and gas mining lease purchased by the said Dowell from the said defendant Rucker, and set out in Count One hereof, and that his company, the Texas Oil Company, had sent him to the said Dowell for the purpose of purchasing the same at and for the sum of $9800.-00, and at the said time, the said defendant Frank Falkner, alias Compton, presented to him, the said Dowell, the said check or bank draft which had been exhibited to him by the defendant Loyd in the purchase of the lease named and mentioned in Count One hereof, and advised him, the said Dowell, that his company was anxious to purchase the same at and for said sum of money, but that the defendant John M. Rucker had a lease on another

eighty acres joining the said property mentioned in Count One hereof, and that his company was extremely anxious to have a lease upon that eighty also, and that if the said Dowell could purchase an assignment of oil and gas lease from the said defendant Rucker upon the adjoining eighty acres to that named in Count One, then that his company was ready to take over the two leases from the said Dowell at and for the sum of $24,000.00, and that he, the said defendant Frank Falkner, alias Compton, was ready to take the first lease named in Count One hereof, but must have the second lease and that if the said Dowell would obtain an assignment from the defendant Rucker for a second lease upon the eighty acres adjoining the first one purchased by him, that he was then in position, as the representative of the said Texas Oil Company, to pay to him the sum of $24,000.00 for an assignment of lease upon the two pieces of property named, all of which the defendant Frank Falkner, alias Compton, did so state and represent to the said Frank Dowell.

"Upon such representations and the showing of the said instrument purporting to be a check or draft from the said oil company, and the said Dowell relying upon such statements and instrument to be genuine and believing the same to be truthful and genuine and that he could make a profit upon the purchase of the said second lease, the said Dowell did, on the 29th day of August, 1945, contact the said defendant John M. Rucker and did purchase from the defendant John M. Rucker, at and for the sum of $4100.00 in good and lawful money of the United States of America, the said second lease or assignment thereof, believing and trusting, implicitly, that he could, as he was told and informed by the defendant Frank Falkner, alias Compton, sell the same to the said company at and for a profit to himself of some $9100.00.

"And the said defendant Frank Falkner, alias Compton, working together with his co-defendants herein, caused the said Dowell to believe all of the said statements and

representations made and to rely thereon and to part with his money in the sum of $4100.00 for the assignment of the second lease above mentioned and set out.

"After he had parted with his money for the purchase of the said second lease from the defendant John M. Rucker, both of the defendants Frank Falkner, alias Compton, and the defendant Bodine Loyd disappeared and have never at any time complied with their representations, promises and agreements to take over the said property and all of the said statements and representations to the said Dowell by the defendants being made without intention to perform any of the same and with intent not to perform the same, but were made wholly for the purpose of defrauding the said Dowell of his money as was done in the said cause, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the State of Oklahoma. * * *"

Whereupon defendant filed a motion to require the state to elect upon which of the two counts defendant would be put to trial. This motion was by the court sustained. The action was dismissed as to Bodine Loyd.

Thereafter the state filed a Second Amended Information, the charging portion of which reads as follows, to-wit:

"* * * that on or about the 29th day of August, 1945, in the County of Rogers and State of Oklahoma, one John M. Rucker and Frank Falkner, alias Compton, did then and there willfully and unlawfully, acting conjointly and together, and with a premeditated intent and design on the part of the said defendants, and each of them, to cheat and defraud one Frank Dowell of the sum of $4100.-00, good and lawful money of the United States of America, and did obtain from the said Frank Dowell, on or about the date above named, the sum of $4100.00, good and lawful money of the United States, while so acting together with a premeditated intent and design on the part of them, as above set out, by means and use of a cer-

tain trick and deception and false and fraudulent representations and statements and pretenses and instruments and devices commonly called the 'confidence game' as defined in Section 1541 of Title 21 O. S. 1941, they, the said defendants, knowing at the time that their said representations and statements were false, untrue, and fraudulent, and made for the purpose of and with the intent of them, the said defendants, to cheat and defraud the said Frank Dowell of the said money. The said Frank Dowell, relying upon their statements so made to him, implicitly, and by the use of said certain trick and deception and fraudulent representations and statements and pretenses and instruments and devices commonly called the 'confidence game', and by the reliance of the said Frank Dowell upon such as being true, and believing the same to be true, did part with the said sum of $4100.00 to them, the said defendants, as above set out, in the manner and form as follows, to-wit:

"That on the 29th day of August, 1945, and just prior thereto, the said defendants, John M. Rucker and Frank Falkner, alias Compton, confederated together for the purpose of making, forming, and using a certain game and trick known as a 'confidence game' with the intent to take from the said Frank Dowell the said sum of money, fraudulently and by the said 'confidence game' and scheme, they, the said defendants, agreed between themselves that the defendant, Frank Falkner, alias Compton, would contact the said Frank Dowell, who had just purchased of and from the defendant, John M. Rucker, a certain assignment of oil and gas mining lease, and advise him, the said Dowell, that he, the said defendant, Frank Falkner, alias Compton, was the representative of the Texas Oil Company, a company dealing in leases, production, and manufacture of petroleum products in the State of Oklahoma, and that his said company desired to purchase another certain assignment of lease from the said Rucker upon an adjoining eighty acres of land in the County of Cherry and State of Nebraska, and that he would pay, as the representative of the said company, the sum of $9800.00 for the first assignment of lease which the said

Dowell had purchased, and that if the said Dowell would purchase an assignment of lease on the said second eighty acres of land, above mentioned and referred to, that he, the said defendant, Frank Falkner, alias Compton, was ready to purchase an assignment of the said oil and gas lease purchased by the said Dowell from the said defendant Rucker for his said Company, and that his said company had sent him to the said Dowell for the purpose of purchasing the same at and for the sum of $9800.00, and at the same time, the said defendant Frank Falkner, alias Compton, presented to him, the said Dowell, a check or draft purporting to be of the said Texas Oil Company in the sum of $9,800.00 but advising him, the said Dowell, at the said time, that his company desired to have the second eighty acres above mentioned and referred to, or the assignment of a lease thereon, and that if the said Dowell would purchase an assignment of lease of the said second eighty acres of land, for the two assignments of leases on the two eighty acre tracks of land in the said county and state above mentioned, that his said company had authorized him, the said defendant Frank Falkner, alias Compton, to pay to the said Dowell the sum of $24,000.-00 for an assignment of leases upon the two tracts, and that if he would go to the said defendant, John M. Rucker, and purchase the second assignment of lease on the said second eighty acres of land, that he, the said defendant Frank Falkner, alias Compton, would pay to the said Dowell the sum of $24,000.00 for his company for an assignment of the two leases.

"The said Dowell, seeing the said purported check or draft which was exhibited to him by the said defendant, Frank Falkner, alias Compton, purportedly of the Texas Company for the purchase of his first lease which he had purchased, and the absolute assurance of the said defendant Frank Falkner, alias Compton, that he was in position to pay the sum of $24,000.00 for the two leases, the said Dowell relying upon the statements and exhibits above set out, contacted the said defendant Rucker and purchased of and from him an assignment of lease on the second eighty acres of land, above mentioned and referred

to, and paid to him the sum of $4,100.00 for such assignment of lease, believing and relying upon the said exhibition to him of the said $9,800.00 check and the statements and agreements and promises made by the said defendant, Frank Falkner, alias Compton, and thereby and under such conditions parted with his said $4,100.00, good and lawful money of the United States of America, and the said Dowell relied upon the genuineness of the said instrument of check or draft, and believing all of the statements to be truthful and genuine, and that he could make a profit upon the purchase of the said second lease, the said Dowell did, on the 29th day of August, 1945, contact the said defendant, John M. Rucker, and did purchase from the said defendant, John M. Rucker, at and for the sum of $4,100.00 the second lease or assignment thereof, believing and trusting implicitly that he could, as he was told and informed by the said defendant, Frank Falkner, alias Compton, sell the same to the said company at and for a profit to himself of some $9,100.00.

"After he had parted with his money for the purchase of the said second lease from the defendant, John M. Rucker, the defendant, Frank Falkner, alias Compton, disappeared and has never at any time complied with any of their promises and representations and agreements to take over the said property and pay the sum of $24,000.-00, and the said promises and agreements being made by the said defendants without intention to perform any of the same and with intent not to perform the same, but were made wholly for the purpose of defrauding him, the said Dowell, as was done in the said cause, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State of Oklahoma. * * *"

To this second amended information the defendant filed a motion to quash, alleging, in substance, that the second amended information was not an election but amounted to a new and different offense, that the court

was without authority to arraign the defendant on the second amended information, it being alleged, the defendant never having had a preliminary on said new charge and never having waived his constitutional right thereto and for all of said reasons the defendant said the cause should abate as to him. A careful examination and analysis of the complaint and the original information discloses so far as the intent is concerned that it charged a "confidence game" as a continuing device and scheme covering a period of nine days by means of which and during which time the defendant and his accomplices obtained from Frank Dowell the victim $8,100. The amended information separates the confidence game into two separate and distinct transactions in Counts One and Two, the first count alleging the inception of the confidence game and fraud by which the defendant and his accomplices swindled Dowell out of $4,000. Count Two refers back to the matters alleged in Count One of necessity, because of the continuity of the "confidence game" or scheme to defraud by which the defendant and his accomplices swindled Frank Dowell out of the additional $4,100. The second amended information alleged the $4,100 transaction of August 29, 1945, as the basis of the charge therein contained. Both counts in our opinion are good against demurrer. The two transactions, so far as the game is concerned, were one and inseparable. The first deal constituted the point of beginning for the second. The first deal might have been charged independently, the second could not. The first deal was the one by which the victim's confidence was gained and exploited for the greater swindle in the second, as the evidence which will hereinafter be set forth and discussed discloses. In truth and in fact, though not technically so, the entire game was one continuous scheme with

but one intent, to swindle Frank Dowell as long as he was susceptible. So far as he was concerned "they would milk him until milking time was over". If it had not been one continuous game the defendant and Falkner could not have dangled the $24,000 before Dowell for the two 80-acre tracts. If it was not one game up to that point, the defendant and his accomplices certainly disclosed their hand as to their intention to make it such. The two transactions are so interminably interwoven that from a factual standpoint they could not be entirely separated so that the state could stand on Count Two and entirely ignore Count One. The allegations of the complaint and the second amended information deal with the same factual situations. If any event, the second amended information is unmistakably clear as to the charge laid against the defendant, he was to be tried on the transaction of August 29, 1945, for perpetrating a confidence game upon Frank Dowell, by means of which he swindled him out of $4,100 on August 29, 1945. The new charge was substantially the same as the old charges. John M. Rucker could therefore not be misled as to the charge he was called upon to meet. There is no new offense alleged in any of said pleadings. The substance is the same. Courts in any case should embrace technicalities only when they partake of substance. They should look to forms only when they become the skeleton around which the substance is built. Here from beginning to end the pleadings allege the same game. There is only a change in form and detail, so when the defendant was arraigned on the second amended information he was not required to plead to a new and different crime. It was the same old confidence game he was called upon to meet in the original complaint, the original information, and

the first amended information with the state electing to stand for conviction on the overt acts occurring and the wrongs committed on August 29, 1945. Therefore the second amended information does constitute an election to stand for a conviction on the transaction of August 29, 1945. The defendant was not entitled to a new preliminary. Consequently, the defendant's contention that the proceedings leading up to the filing of the second amended information were insufficient to confer jurisdiction upon the court is without merit.

This brings us to the defendant's second contention that "the second amended information filed by the state was demurrable and the trial court committed reversible error in overruling defendant's demurrer thereto". A careful examination of the second amended information discloses that it clearly charges the acquisition of Frank Dowell's confidence from a personal standpoint based upon the representations that John M. Rucker and Frank Falkner were the agents of what the victim quite naturally presumed was the responsible and highly respected Texas Oil Company. Moreover, it clearly appears from the second amended information that they also gained the confidence of Frank Dowell through the device of the $9,800 check purporting to be the check of what the victim believed to be the reputable Texas Oil Company. Based upon the confidence thus gained, the swindling operation was completed in the transaction of August 29, 1945, and $4,100 was taken from Frank Dowell without any intention on the part of the defendant and his associates of ever returning to Frank Dowell anything at all equivalent in commercial value to the $4,100 which the defendant and his associates received from him. And therein we find the distinctive feature of the confidence game. Rosenberger v. Harris, C. C. Mo., 136 F. 1001 (re-

34

versed on other grounds), 145 F. 449, 76 C. C. A. 225, 13 L.R.A., N.S. 762, certiorari denied 27 S. Ct. 778, 203 U.S. 591, 51 L. Ed. 331. Such transactions are founded upon deceit, deceit based upon misplaced confidence. Such confidence is obtained by a person selling one's self to the victim, or by means of a device by which the victim's confidence is gained. As to the swindler's operations to obtain the victim's confidence forming the basis for a charge and conviction in a confidence game, there is no doubt. 22 Am. Jur. § 74, page 482, Note 5:

"It may be said, however, that where by a course of conduct one has led his victim to repose confidence in him with a view of taking advantage thereof and thus obtaining the victim's money or property, takes advantage of the confidence reposed, and thus obtains the money or property of his victim, the statute has been violated. Such a statute is designed to reach that class of offenders known as confidence men who practice upon unwary victims swindling schemes as various as the mind of man is suggestive."

The same is true where the confidence of the victim is gained by the means of the use of a device, such as forged letters, checks, etc., designed to gain misplaced confidence, upon respect which the swindler has reasonable assurance the victim holds for the person, firm or corporation whose name is thus misused. People v. Shaw, 300 Ill. 451, 133 N.E. 208; Juretich v. People, 223 Ill. 484, 79 N.E. 181, 182, wherein the Illinois court said:

"Acts which will constitute the practice of the confidence game * * * we have held * * * includes any swindling operation in which advantage is taken of the confidence reposed by the victim in the swindler. It is very often practiced by the use of cards, dice, checks, or other means, instruments, or devices in which the victim gets nothing, but is simply swindled out of his money by some

trick or device. Du Bois v. People, 200 Ill. 157, 65 N.E. 658, 93 Am. St. Rep. 183; Graham v. People, 181 Ill. 477, 55 N.E. 179, 47 L.R.A. 731; Maxwell v. People, 158 Ill. 248, 41 N.E. 995."

22 Am. Jur. 483, § 74, Note 9:

"While the confidence game is most frequently practiced by the use of cards, dice, or other means, instrument, or device, in which game the victim gets nothing, and is simply swindled out of his money by a trick, the fact that the dealings assume the form of a business transaction and involve a breach of contract does not relieve of criminality the party who enters into it as a mere incident to a false and fraudulent scheme to obtain money or property from the other party; it is a confidence game, notwithstanding its contractual form."

This information is entirely adequate to inform the defendant of the charge he must meet. It meets the elemental requirements of the law as to the allegations of the means through which confidence was obtained. In this instance confidence was gained not only by personal means but also by device, together with a clear picture of a swindling operation, both of which must exist to support a conviction. People v. Epstein, 338 Ill. 631, 170 N.E. 678, 679. It further alleges that through misplaced confidence the victim Dowell was deceived and defrauded.

The defendant overlooks the fact that the information is based upon the use by the defendants of the confidence game. He directs his argument against the said information upon the basis that the charge as laid in the information is that of obtaining money by false pretenses. The charge of obtaining money or property by use of the confidence game is not the same as that of obtaining such money or property by false pretense as we have hereinbefore said. The defendant confuses the issues as set forth in the second amended information. A casual

examination of the same discloses the charge alleges a most effective use of the confidence game. But considering the information in the light of this contention of the defendant, the information charges representations as to existing facts first, that the said Frank Falkner was a representative of the Texas Oil Company dealing in leases, production and the manufacture of petroleum products in the State of Oklahoma. Second, that the said company desired to purchase another certain assignment of lease from said Rucker adjoining the 80 acres of land in the county of Cherry, State of Nebraska, for which he would pay as a representative of said company the sum of $9,800 for the first assignment of the lease. Third, said Falkner displayed a check or draft purporting to be that of the said Texas Oil Company in the sum of $9,800. Fourth, the said information alleges that the said company desired to have the second 80 acres mentioned, and that if both of said leases could be obtained through Frank Dowell as purchaser from the said John M. Rucker, said company, through Falkner, would pay $24,000 therefor. Based upon the representations thus made and the confidence which Frank Dowell reposed in said Frank Falkner, he did purchase from John M. Rucker the second lease for the sum of $4,100. The information then alleges that the representations and pretenses thus made by the defendant were made knowing the same to be false, untrue and fraudulent. Thus, upon consideration of the information upon the basis of a charge of false pretense, the information is sufficient.

A casual examination of the information discloses that it is predicated primarily and basically upon the statute defining "confidence game" and alleges the necessary elemental facts necessary to be good against a demurrer.

In his supplemental brief defendant contends that the second amended information like the previous one is defective for its failure to use the words "felonious or feloniously", and therefore does not allege a felonious intent. This contention is wholly without merit since the grade of the offense does not depend upon intent but is precisely controlled in terms of value of the money or property involved. If the amount is less than $20 the offense constitutes a misdemeanor. If the amount is over $20 the offense is a felony. Intent is therefore immaterial in determining the grade of the crime. Moreover, it was said in Doolin v. State, 69 Okla. Cr. 88, 101 P. 2d 271, 272:

"In describing the offense the statute does not use the word 'felonious'. Under the decisions of this court it is well settled that in indictments or informations for statutory offenses, it is only necessary to use the language of the statute, unless it is apparent that there are elements of the offense not described in that language. This case being based upon a statute which is clearly a statutory offense there was no error in the court overruling the demurrer to the information upon the ground that it did not use the word 'feloniously'."

Since the grade of the offense defined in section 1541, Title 21 O. S. 1941, is determined by the value of the property taken and not upon the basis of felonious intent, it is apparent that this contention is wholly without merit. In the Doolin case supra this court cited Bannon & Mulkey v. United States, 156 U. S. 464, 15 S. Ct. 467, 468, 39 L. Ed. 494; United States v. Staats, 8 How. 41, 12 L. Ed. 979.

After a careful analysis of the charge as embraced under the information in the case at bar, we are of the opinion that the acts and representations allegedly made by the defendant, as detailed in the second amended in-

formation, clearly place this offense within the class of cases defined by section 1541, Title 21 O.S. 1941. Therefore, we are of the opinion that the trial court did not err in refusing to sustain the defendant's demurrer to the information.

Next, it is contended by the defendant that the court committed reversible error in not sustaining his verified application for change of venue, which application he supported by 250 affidavits. He filed the application for change of venue on the afternoon of May 22, 1946, the day before the case was called for trial. The county attorney filed no counter affidavits. He called the notaries public to testify. Not more than 60 appeared before them and swore to the same. The balance of the signatures were obtained by the defendant himself and the notaries public did not see them sign. It developed that the defendant had procured the signatures himself and presented all but 60 of the affidavits to the notaries public, who thereupon affixed their signatures, without seeing said affiants sign the affidavits, and then affixed their seals without the affiants having been sworn by them. Under Title 22 O. S. 1941 § 561 a change of venue may be had under the following conditions:

"Any criminal cause pending in the district court may, at any time before the trial is begun, on the application of the defendant be removed from the county in which it is pending to some other county in said judicial district, whenever it shall appear in the manner hereinafter provided, that the minds of the inhabitants of the county in which the cause is pending are so prejudiced against the defendant that a fair and impartial trial cannot be had therein. Such order of removal may be made on the application of the defendant by petition, setting forth the facts, verified by affidavit, if reasonable notice of the application be given to the county attorney and the

truth of the allegations in such petition be supported by the affidavits of at least three credible persons, who reside in said county. The county attorney may introduce counter affidavits to show that the persons making affidavits in support of the application are not credible persons and that the change is not necessary, and may examine the witnesses in support of said application in open court in regard to the truth of said application; and if it be made to appear by the affidavits and examination of witnesses that a fair and impartial trial cannot be had in the county, a change shall be granted and the order made by the court. When there are several defendants in any indictment or criminal prosecution, and the cause of the removal thereof exists only as to one or more of them, the other defendants shall be tried and all proceedings had against them in the county, in which the case is pending, in all respects as if no order of removal had been made as to any defendant."

On this question it was said in Rawls v. State, 86 Okla. Cr. 119, 190 P. 2d 159, 164, in the body of the opinion:

"It is also well settled that an application for change of venue comes too late where presented without reasonable notice to the county attorney so as to enable him to make preparation to resist the application by procuring counter affidavits or otherwise if he so desires. Caples v. State, 3 Okla. Cr. 72, 104 P. 493, 26 L.R.A., N.S. 1033; Goss v. State, 24 Okla. Cr. 383, 218 P. 339."

Here the application came too late. In the Rawls case notice was given six days before trial date of the application for change of venue that such application would be made. The county attorney had ample time in which to procure counter affidavits or such evidence as would have overcome the showing made by the defendant. In the Rawls case the county attorney did not resist the application. Therein only 100 affidavits were presented, all presumably valid. Here the county attorney resisted

the application. He proved by the notaries public that all but 60 of said affidavits were not executed as provided by statute, Title 12 O.S. 1941 § 422, as follows:

"An affidavit is a written declaration, under oath, made without notice to the adverse party."

This proof casts a shadow of suspicion upon the validity of the entire proceedings. As was said in Rawls v. State, supra:

"4. The granting or refusing of a change of venue is a matter resting within the sound discretion of the trial court to be disposed of in furtherance of substantial justice; and action of trial court will not be disturbed on appeal, unless there is an abuse of discretion.

"5. An 'abuse of discretion' by the court in passing on a motion for change of venue means a clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented in support of and against the application."

A careful examination of the record herein discloses there was no abuse of the court's sound discretion clearly against the logic and effect of the facts presented in support of and against the application. When the jury was selected one disqualified on the ground that he was a relative and another stated he had an opinion. There was not a single juror challenged for cause. In fact, the defendant made only the slightest effort to show bias or prejudice on the part of the jurors. Moreover, the record shows that the defendant in effect disclosed to one of the notaries that his real fear was not prejudice of the jurors but fear of the special prosecutor, H. Tom Kight, and his influence in the county. In fact, when the defendant took the stand himself in support of his change of venue, he failed to support the charge of prejudice as to the jury panel. He did not detail a single solitary

fact indicative of prejudice entertained by a single solitary juror. All of these facts were taken into consideration on passing upon the application for a change of venue. Under the conditions herein presented, it was not error for the trial court to refuse the change of venue. In State v. Taylor, 138 Kan. 407, 26 P. 2d 598, it was said:

"(a) The showing made in support of an application for change of venue was not so persuasive as to require that it be granted, although no counter affidavits were adduced by the state to resist it.

"(b) The ease with which a jury was obtained and qualified on their voir dire to try the cause, before the application for change of venue was denied, was of some probative force to show that a change of venue was not necessary to insure the defendant a fair trial."

Furthermore, in Sweet v. State, 70 Okla. Cr. 443, 107 P. 2d 817, 821, this court, speaking through Judge Jones, said:

"It is not an abuse of discretion to deny a change of venue where the subsequent proceedings show that there was no difficulty in securing a fair and impartial trial. Huffman v. State, 28 Okla. Cr. 296, 230 P. 272; Dodson v. State, 33 Okla. Cr. 85, 242 P. 578."

The record of the proceedings subsequent to the filing of the application for a change of venue is conclusive, upon the proposition of the defendant's securing a fair and impartial trial free from bias and prejudice. The court did not commit reversible error in refusing to grant the application therefor.

Objection is also made to the trial court's action in permitting the endorsement of the name of Bodine Loyd upon the information as a witness in chief for the state. We have examined the evidence of this witness and are

of the opinion that he did not testify to anything not known to the defendant. Furthermore, a subpoena had been issued for this witness for nearly two weeks before the trial. The defendant could not have been surprised at the request for permission to endorse his name upon the information. Moreover, this is not a capital case and the matter of granting this permission lies in the discretion of the trial court. In Goodwin v. State, 68 Okla. Cr. 381, 99 P. 2d 181, this court said:

"Under the statute, in felony cases, other than capital, permission to indorse the names of additional witnesses on an information before the trial is a matter within the discretion of the trial court, and unless an abuse of this discretion appears, prejudicial to the substantial rights of defendant, its ruling will not be reviewed."

The defendant further contends that the defendant's demurrer to the evidence interposed at the close of the evidence in chief on behalf of the state should have been sustained and the overruling of the same by the trial court was reversible error. The evidence in substance herein discloses that on August 21, 1945, Rucker contacted Bodine Loyd who was Dowell's friend and old neighbor. He propositioned Loyd to contact Dowell for the purchase of an 80-acre lease in Cherry county, Nebraska, which Rucker said he owned. He instructed Loyd that he should go to the Will Rogers Hotel and by raising his hat he would be contacted by a man by the name of Compton who would give him the information concerning the lease. Contact with Falkner was made, who represented himself to be Compton, the agent of the Texas Oil Company of Oklahoma. He informed Loyd he wanted the 80-acre lease owned by Rucker, but for special reasons wanted some one else to buy it. As proof of his representation

as a representative of the Texas Oil Company of Oklahoma, he had a letter purportedly from the said company, and also a check for $9,800 which he said he was ready to deliver to the purchaser of the lease from Rucker for an assignment thereto. Armed with these, this old friend and neighbor showed them to old man Dowell, then 72 years of age. Thus, the evidence disclosed confidence was gained first through the friendship of Loyd, and, second because he believed Falkner represented the Texas Company, which he undoubtedly believed to be the nation-wide reputable Texas Company and not the fly-by-night institution under which the swindlers operated the Texas Company of Oklahoma. This belief was confirmed in the letter and check for $9,800. This proof meets the requirements of the rules of law hereinbefore laid down with reference to a "confidence game". Thus fortified Loyd then took the unsuspecting Dowell to John M. Rucker, the defendant. In their negotiations Rucker told Dowell there was oil all around the 80 acres, and he even took pains to draw a plat of the land indicating with symbols that there were oil wells around the land. This plat forms a part of the evidence. The deal was made for the purchase of the first 80 acres at the price of $4,000. Obviously, in order to defeat the venue, he told Dowell the lease was in Sapulpa, Creek county, and it would be necessary to go there to complete the deal, but in his efforts to give the appearance of validity to the transaction, he outsmarted himself. He required a $100 earnest money payment which Dowell paid him by check. Dowell then went to Collinsville with Loyd where Dowell got $4,000 out of the bank. They then went to Sapulpa. Dowell was taken to an attorney who pronounced the lease valid and then Dowell paid over

the money to Rucker in the sum of $4,000. In an effort to further confuse the issue and get possession of the lease which had just been delivered to Frank Dowell and to destroy the evidence of the transaction it was suggested to him that Rucker or Loyd be permitted to take the lease to Oklahoma City and have the same recorded. This Frank Dowell refused to do, stating that it was his belief it should be recorded in Cherry county, Nebraska. With this statement Rucker agreed. The next day Rucker saw Dowell in Claremore and told him he had another 80 acres for sale adjacent to the first 80. It was then that he drew the plat showing the location of the oil wells. The evidence further discloses that subsequent to this transaction and leading up to the deal of August 29, 1945, Frank Falkner, who represented himself to be Compton, contacted Frank Dowell and informed him that Rucker had a second 80 acres adjacent to the one he had just purchased. In substance, he stated he was ready to buy the original 80 acres that he had purchased from Rucker on August 22, 1945, and again displayed the $9,800 check. He said, however, that he desired Rucker's other 80 acres adjacent to the first 80 acres and that the company was so desirous of procuring that 80 that they would pay $24,000 for the entire 160 acres and that he wanted him to contact Rucker with reference to the purchase of the entire tract. Dowell's confidence was thus being imposed upon in a manner similar to that in which it was betrayed in the first instance. He contacted Rucker and an agreement was reached for the purchase of the second lease for $4,100. He again made a trip to Collinsville, made arrangements at the bank for the $4,100, returned again to Sapulpa, Okla., where the second assignment of the second 80 acres was delivered to him by Rucker upon the payment of the $4,100. In

a conversation following the second transaction Falkner informed Frank Dowell that when he went to Valentine, Cherry county, Nebraska, to record his lease he would drive him there in Falkner's car. Dowell declined, saying he would go by train. Falkner suggested that Frank Dowell stay at the best hotel and that he would see him there. He thereupon took his two leases himself to Valentine, Nebraska, where he recorded them. He then made inquiry relative to the representations that had been made to him with reference to oil wells being located all around his 160 acre lease. Much to his surprise and dismay he discovered that he had been swindled, that there was no oil in the entire county. The evidence further discloses that in an additional effort to completely destroy the documentary evidence concerning these transactions, John M. Rucker removed the letter which constituted a part of the scheme by means of which the confidence of Frank Dowell was first obtained from Bodine Loyd's car, and knocked his arm back in order to get it, and also at that time took the draft which was later delivered to Falkner with the aid of which he completed the execution of the second swindle. After the second 80-acre transaction Frank Dowell saw nothing of or heard from John M. Rucker or Falkner or Bodine Loyd until they were arrested. The defendant did not testify in his own behalf but rested his case on the demurrer to the evidence. Under such circumstances the jury had the right to make logical deductions and draw reasonable inferences from the evidence thus offered. The logical conclusion to be drawn from the evidence is that the two checks were bogus and had never been drawn or written by the Texas Company for the use of any agent or representative by the name of Falkner who operated under an alias as Compton and there was never any intent to deliver to

Dowell the $9,800 or to pay him the $24,000. If the transaction had been bona fide and John M. Rucker and his accomplices had been employed by the true Texas Oil Company and not the fly-by-night Texas Company of Oklahoma, they would have offered proof relative to the same. If such a company as the Texas Oil Company of Oklahoma actually existed, they would have offered proof of that fact. These are some of the inescapable conclusions drawn by the jury, pointing to the defendant's guilt. The record herein discloses that the evidence meets all of the requirements to warrant a conviction for the perpetration of a confidence game. It establishes confidence of the victim was first obtained by means of friendship for an old neighbor, Bodine Loyd. It further shows this confidence was exploited by means of the devices employed to the effect that Falkner represented the Texas Oil Company, had a letter and a check for $9,800, purportedly from the said company, and then the swindling operation predicated upon the misplaced confidence thus gained. We can arrive at no other conclusion than that the evidence is sufficient upon which to base this conviction.

The defendant next objects to the admission of evidence relative to the testimony of Loyd and Dowell involving the first lease in which the $4,000 was paid. He contends it was reversible error to permit Bodine Loyd to testify relative to the first transaction involving the first lease and the $4,000 deal. This evidence is clearly admissible since the first transaction constitutes a part and parcel of the confidence game employed. It was part of a plan by which they prepared their victim for the larger steal. It is so closely related in point of time, method and sequence as to make it impossible to present the transaction of August 29, 1945, without proof of the

first transaction. Upon this theory the evidence was clearly admissible. In any event if not admissible upon this theory then, as was said in People v. Shaw, 300 Ill. 451, 133 N.E. 208, 209, by the Supreme Court of Illinois:

"In a prosecution for practicing the confidence game, evidence is admissible of similar transactions to prove guilty knowledge and criminal intent. Du Bois v. People, 200 Ill. 157, 65 N.E. 658, 93 Am. St. Rep. 183; People v. Weil, 244 Ill. 176, 91 N.E. 112; People v. Donaldson, 255 Ill. 19, 99 N.E. 62, Ann. Cas. 1913D, 90; People v. Strosnider, 264 Ill. 434, 106 N.E. 229; People v. Crawford, 278 Ill. 134, 115 N.E. 901."

See, also, People v. Bertsche, 265 Ill. 272, 106 N.E. 823, Ann. Cas. 1916A, 729; State v. Wilson, 223 Mo. 156, 122 S.W. 701; People v. Mutchler, 309 Ill. 207, 140 N.E. 820, 35 A.L.R. 339. On either theory we are of the opinion that the trial court did not commit reversible error in admitting the evidence of Bodine Loyd relative to the first transaction involving the first 80 acres and the $4,-000 deal on August 21, 1945.

It will not be necessary for us to consider any of the other of defendant's listed points dealing with the court's action overruling the defendant's motion in arrest of judgment and denying of his motion for new trial. For all of the reasons hereinbefore set forth, we find the errors complained of are without merit. The judgment and sentence herein imposed is accordingly affirmed.

BAREFOOT, P. J., and JONES, J., concur.

## On Rehearing.

R. A. Wilkerson, of Pryor (David Tant, of Oklahoma City, of counsel), for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, J. In the petition for rehearing defendant urges several grounds for relief, only one of which seems to merit consideration. That proposition is based upon § 17, art. II of the Constitution as follows:

"No person shall be prosecuted criminally in courts of record for felony or misdemeanor otherwise than by presentment or indictment or by information. No person shall be prosecuted for a felony by information without having had a preliminary examination before an examining magistrate, or having waived such preliminary examination. Prosecutions may be instituted in courts not of record upon a duly verified complaint."

He says, under this section and the order of the committing magistrate, he could not be prosecuted for the crime of perpetrating a confidence game. The order of commitment made and entered by the justice of the peace reads as follows, to wit:

"It appearing to me that the offense named in the within complaint mentioned obtaining money under false pretense has been committed and there is sufficient cause to believe the within named John M. Rucker, Bodine Loyd and Frank Falkner, alias Compton, guilty thereof, I ordered that he be held to answer the same and that he be admitted to bail in the sum of $5,000.00 and he be committed to the sheriff of Rogers County, State of Oklahoma, until said bail is given."

He contends, since he was bound over for the crime of what the justice of the peace described as "obtaining money under false pretense," that he therefore has not had a preliminary hearing for the crime of perpetrating a "confidence game," and he, therefore, could not lawfully be charged by information for the crime of perpetrating a confidence game. For a proper consideration of this point we must call attention to the provisions of § 1541, Title 21 O.S.A. 1941; the pertinent part thereof is set forth as follows, to-wit:

"Every person who, with intent to cheat and defraud, shall obtain or attempt to obtain from any person, firm or corporation, any money, property, or valuable thing, of the value of Twenty ($20.00) Dollars, or less, by means or by use of any trick or deception, or false or fraudulent representation, or statement or pretense, or by any other means or instrument or device commonly called the 'confidence game,' or by means or use of any false or bogus checks, or by any other written or printed or engraved instrument or spurious coin, shall be guilty of a misdemeanor and upon conviction thereof shall be punished by a fine not to exceed One Hundred ($100.00) Dollars, or by imprisonment in the county jail for not more than thirty (30) days, or by both such fine and imprisonment. If the value of the money, property or valuable thing referred to in the preceding paragraph, be more than Twenty ($20.00) Dollars, any person convicted hereunder shall be deemed guilty of a felony and shall be punished by imprisonment in the State Penitentiary, for a term not exceeding seven (7) years, or by a fine not to exceed Five Hundred ($500.00) Dollars, or by both such fine and imprisonment. * * *"

The remainder of said section relates to the definition of bogus checks, credit, etc.

Herein it is apparent that this section defines offenses in relation to obtaining money or property "by means or by use of any trick or deception, or false or fraudulent representation, or statement or pretense," or, "by any other means or instrument or device commonly called the 'confidence game,'" or, "by means or use of any false or bogus checks, or by any other written or printed or engraved instrument or spurious coin," all being crimes that fall within the generic definition of obtaining money or property by false pretense, but defined as separate offenses because of the different means or methods employed to unlawfully obtain one's money or property.

The foregoing contention of the defendant presents two questions: First, shall the ineffectual attempt on the part of the committing magistrate to describe generically the character of the crime charged in the complaint, determine whether the defendant has had a preliminary hearing on the charge laid in the information, or must the complaint, the order of commitment, and the information be read together in order to ascertain whether the defendant has actually been accorded a preliminary hearing on the charge as laid in the information or informations? The answer to the question is obviously in the affirmative. Or, putting it a little differently, shall an ineffectual but generic description of a justice of the peace, standing alone, permit the defendant to assert that he has not been accorded a preliminary hearing, when an examination of the complaint, the order of commitment and the information discloses that the charge has been substantially the same throughout the entire proceeding. The answer to this question should be in the affirmative. In support of this conclusion, we find no Oklahoma case squarely in point, but People v. Tinnen, 49 Cal. App. 18, 192 P. 557, 559, presents a complete answer to the contention of the defendant. The defendant therein was charged with the crime of administering poison to Margery Cockcroft with intent to kill and murder. The order of commitment as in the case at bar held the defendant for trial for the crime charged in the within complaint, but preceding that language the committing magistrate made an ineffectual attempt to define the crime as assault with intent to commit murder. The California court said that such description

"* * * merely involved an ineffectual or a futile attempt on the part of the magistrate to characterize generically the character or nature of the crime charged in

the complaint, and for which he had committed the accused. If a complaint or deposition filed before a magistrate were to charge, in legally appropriate language, a person with murder, and, that crime having been shown, the magistrate should in his commitment state, 'It appearing to me that the crime of assault with intent to commit murder has been committed, as charged in the within complaint,' etc., no one would for a moment contend that the commitment was not for murder, and that the erroneous designation in the commitment by the magistrate of the crime so charged would control or modify the general words indicating the crime for which the accused was held or justify the conclusion that the commitment was not for the crime specifically charged in the complaint on which the commitment was indorsed. The commitment and the so-called complaint on which it is indorsed must be read together to ascertain for what offense the accused is committed where the commitment itself does not attempt to define the crime for which the accused is held, but merely in general language states that the accused is held for the crime as it is charged in the complaint. In other words, in such case, the complaint itself becomes an essential part of the commitment, and necessarily we must look to the complaint to ascertain for what specific offense the accused has been committed. The information in this case is, as the counsel for the defendant concedes, substantially in the language of the complaint or deposition, on the back of which the order of commitment is indorsed. It, therefore, follows that, since the said complaint is made a part of the commitment or is by virtue of the language of the order of commitment an essential part thereof, the information sets forth the crime for which the defendant was committed."

As was said in the California case the order of commitment in the case at bar by its very language makes the complaint an essential part thereof and the information thereafter filed in the district court being substantially in the language of the complaint controls over the

technically inaccurate though generically correct description of the justice of the peace as to whether the defendant had a preliminary hearing on the charge as laid in the information or informations that followed. The defendant in his brief in support of this proposition cites the case of Payne v. State, 30 Okla. Cr. 218, 235 P. 558, wherein this court said:

"Where a charge of felony is made before an examining magistrate, and a preliminary examination had, and the accused held for the district court upon the offense charged in the complaint, the county attorney is authorized to file an information against the accused charging only the offense for which the accused is held."

The defendant did not quote from the body of the opinion but from syllabus two. In the body of the opinion the court said:

"This is a judicial determination by the magistrate of the offense found, and, when that has been done as in this case, the county attorney is thereby authorized to file an information charging the offense for which the accused was held, or substantially the same offense. Sayers v. State, 10 Okla. Cr. 195, 135 P. 945 [Id., 10 Okla. Cr. 233, 135 P. 1073]; Ponoksy v. State, 8 Okla. Cr. 116, 126 P. 451; Morgan v. State, 8 Okla. Cr. 444, 128 P. 159; Stephens v. State, 12 Okla. Cr. 90, 152 P. 138; Muldrow v. State, 16 Okla. Cr. 549, 185 P. 332; Chappelear v. State, 10 Okla. Cr. 392, 136 P. 978."

We call attention to the fact that in Payne v. State, supra, in defining what is meant by substantially, the court said:

"By the term 'substantially the same offense' is meant offenses varying only in degree, or means, or circumstances. Thus where an offense for which an accused is held is divided into degrees, and the accused is held for the higher, an information may be filed for the lower, *or where the details involved differ as to means, methods,*

*or circumstances, and the charge in the information is for some form of that offense and not a different offense,* the informing officer may vary the charge in formal and nonessential matters to meet the contingencies of the testimony. But he may not add or charge a new offense. The prosecuting officer, in other words, is not permitted to substitute his judgment for that of the committing magistrate" (Italic ours.)

In this connection we must point out that under the section of the statute herein involved, § 1541, O.S.A. 1941, Title 21, the crime of obtaining money by false pretense may involve three different means, methods or circumstances as hereinbefore enumerated, but generically speaking, while it might not be entirely accurate to describe the same as obtaining money under false pretense, where the statute was violated by use of a bogus check or confidence game, such a description would not be so erroneous as to constitute grounds for reversal, particularly where the record discloses that the charge was substantially the same throughout the entire proceedings, as is presented in the case at bar. But where it is apparent that the prosecuting officer has not substituted his judgment for that of the committing magistrate as evidenced by the complaint, order of commitment and the information or informations, the defendant cannot complain he has not been accorded a preliminary hearing on the charge as contained in the information. It is apparent in the case at bar that the accused was charged by information as originally drawn and as amended upon identically the same grounds as those relied upon in the complaint, and that it was the intention of the justice of the peace to bind the defendant over on the charge as laid in both the complaint and the informations herein involved, and that there has been a substantial compliance with his or-

der of commitment. In the case of Morgan v. State, 8 Okla. Cr. 444, 128 P. 159, this court said:

"When it appears that the charge in the preliminary complaint is substantially the same as that set forth in the information filed by the county attorney in the district court, a plea of a want of a preliminary examination, or a variance between the preliminary complaint and the information, is unavailing."

See, also, Ponoksy v. State, 8 Okla. Cr. 116, 126 P. 451, and Agent v. State, 18 Okla. Cr. 281, 194 P. 233.

To hold that an ineffectual generic description of the crime charged by the magistrate is controlling, where it appears that the defendant was accorded a preliminary hearing on the charge as laid in both the complaint and substantially the same in subsequent informations would be to open the door to a gross miscarriage of justice based entirely upon the technical ability of the justice of the peace to properly describe the crime as charged in the complaint, and on which the defendant was bound over and thereafter charged in the district court by information. To so hold would be to expect entirely too much of justices of the peace, many of whom are not schooled or versed in the technicalities of the law. We have set forth at great length in the opinion heretofore rendered herein the complaint, the original information, the amended information, and the second amended information and therein said they all charge the defendant with the crime of perpetrating a confidence game on Frank Dowell. We are still of the same opinion. We, therefore, conclude that the defendant's contention that he was not accorded a preliminary hearing on the information on which he was tried is without merit.

Defendant calls our attention to an erroneous statement in the opinion not as a basis for rehearing but which we desire to correct. The error is as follows:

"The logical conclusion to be drawn from the evidence is that the two checks were bogus and had never been drawn or written by the Texas Company for the use of any agent or representative by the name of Falkner who operated under an alias as Compton and there was never any intent to deliver to Dowell the $9800.00 or to pay him the $24,000.00."

The sentence should have read:

"The logical conclusion to be drawn from the evidence is that the $9800.00 check was bogus and had never been drawn or written by the Texas Company for the use of any agent or representative by the name of Falkner who operated under an alias as Compton and there was never any intent to deliver to Dowell the $9800.00 check or pay him the $24,000.00."

Through some inadvertence this correction does not appear in the final draft of the opinion and was overlooked, but we gladly make this correction. The defendant contends there was only one check involved in the transactions. In this he is in error. There were two checks involved, Frank Dowell's $100 valid earnest money check and the $9800 so-called Texas Company check, but only the latter was an instrument of fraud, or was executed for a bogus purpose.

The defendant assigns other grounds for rehearing which largely go to the correctness of the court's conclusion of the pleadings, the evidence, and the inferences to be drawn by the jury therefrom. On these points we have again examined the record in the light of the opinion heretofore rendered but are not persuaded to change our conclusions therein expressed. This record conclu-

sively shows the defendant and his associates defrauded old man Dowell out of $8,100 for what, to every intent and purpose, was a worthless oil lease, said fraud being perpetrated by means of what was clearly a confidence game. The case has some of the aspects of one of the frauds perpetrated by O. Henry's gentle grafters whom, we recall, when the flying machine was a matter of rank speculation, left one of their victims with $10,000 worth of highly decorated stock in the "Consolidated Amalgamated Aerial Franchise Development Company of North America." The story concludes that as they rolled out from under the railroad station sheds in flight, they nudged one another and congratulated themselves on the fact they hadn't stolen the old man's money. We are inclined to suspect the defendant craves exoneration on the technicalities which he raises herein that he may do likewise. We cannot follow him. For all the foregoing reasons the petition, together with the supplement thereto, for rehearing is denied.

BAREFOOT, P. J., and JONES, J., concur.